### FARWELL v. COLONIAL TRUST CO. et al.

(Circuit Court of Appeals, Eighth Circuit. June 7, 1906.)

No. 2,330.

1. EQUITY—ADEQUATE REMEDY AT LAW.

The adequate remedy at law which will deprive a court of equity of jurisdiction is a remedy as certain, complete, prompt, and efficient to attain the ends of justice as the remedy in equity.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, §§ 151, 152; vol. 23, Cent. Dig. Fraud, § 14.]

2. SAME.

An action at law against the vendor of the stock of a corporation for damages is not as adequate, nor is it as complete or efficient, as a suit in equity against the vendor and the corporation to rescind the sale, to recover the purchase price, and to relieve the complainant from liability to the corporation on account of the stock.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, §§ 147–156.]

3. SALE—RESCISSION—MISREPRESENTATION REQUISITE TO INVOKE.

The misrepresentation which will induce a court of equity to avoid a contract or sale must be material, inducing, damaging, and calculated to deceive.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 65–67.]

4. SAME—PROMISE OR PROPHECY WILL NOT EFFECT.

A promise, a prophecy, an expressed opinion or belief, concerning future events or conditions, furnishes no ground for the rescission of a contract or sale.

The subject of an actionable misrepresentation must be the existence or nonexistence of a fact at the time the statement is made.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 65–74.]

5. SAME—INADEQUATE REPRESENTATIONS TO EFFECT—FACTS.

A promoter sold the stock and bonds of a bridge company under the representations (1) that the stock, which was not then issued, would be full-paid and nonassessable, and it was not so; (2) that the bridge company had a contract with a railroad company that it should receive 5 cents for each passenger whom the railroad company carried over the bridge, and it had no such contract, but secured one more than a year before the bridge was ready for use.

*Held*, these representations were insufficient to sustain a rescission of the sale; the first because it related to future acts and conditions, and the second because it caused no damage.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 65–74; vol. 23, Cent. Dig. Fraud, § 14.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Benjamin Schnurmacher and Colin C. H. Fyffe (Leo Rassieur, Theodore Rassieur, and Arthur E. Kammerer, on the brief), for appellant.

P. Taylor Bryan (Harvey L. Christie, on the brief), for appellees Commonwealth Trust Co., Colonial Trust Co., and St. Charles & St. Louis County Bridge Co.

W. C. Scarritt, John K. Griffith, Elliott H. Jones, and Edward L. Scarritt, for appellees Freygand and Trocon.

Before SANBORN and HOOK, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree of dismissal of a bill to rescind a purchase by the complainant from the Colonial Trust Company of 15 bonds, of $1,000 each, and 90 shares of stock, of the par value of $100 each, of the St. Charles & St. Louis County Bridge Company, to recover back their purchase price of $13,125, and for other relief, upon the ground that the bill failed to state facts sufficient to constitute a cause of action. The material facts it set forth were these: In April and May, 1902, the Colonial Trust Company was promoting the construction of a railroad bridge across the Missouri river at St. Charles in the state of Missouri to connect the railroad of the St. Louis, St. Charles & Western Electric Railroad Company, which extended from Wellston in that state to a point on the bank of the river opposite St. Charles, with the latter city. The trust company had made a loan of $400,000 to some of the directors and others connected with the railroad company and was deeply interested in the construction of this bridge. The capital stock of the bridge company was $2,000. Thereupon the trust company issued a plan, pursuant to which the complainant purchased his bonds and stock, wherein the proposal was made that the bridge company should increase its capital stock to $400,000; that it should issue bonds to the amount of $400,000, and secure them by a mortgage upon the bridge; that the bridge company should agree that its capital stock should be full-paid and nonassessable; that its stock should be delivered to the contractors in consideration of their construction of the bridge; that the trust company should be the trustee in the mortgage, and the trustee and manager for the subscribers, and should accept subscriptions and sell the bonds and stock at the price of $875 for one bond and six shares of stock. Before the complainant subscribed, the trust company, in answer to an inquiry, wrote him on April 21, 1902:

"The issuance of these securities will be made in strict accordance with the Missouri statutes and will come out through the contractors as full-paid and nonassessable. The greatest care is being exercised by our attorneys in this matter. * * * In reply to your inquiry as to the guarantee of an amount sufficient to pay at least the interest on the bridge bonds by the St. Louis, St. Charles & Western Electric R. R. Company, the estimate is based on the amount of through traffic now existing, together with the ferry business. The bridge company, through its contract, gets all the 5-cent arbitrary over the river."

147 F.—31

, The complainant avers in his bill that the trust company wrote another letter on April 24, 1902, which will be the subject of subsequent consideration. By these various representations the complainant was induced to subscribe and pay for his stock and bonds.. At the time these statements were made there was no contract between the railroad company and the bridge company about the fare for the transportation of passengers over the bridge, but on June 3, 1902, such an agreement was made by which the railroad company agreed to pay· the bridge company 5 cents for each passenger carried over the bridge in any car operated by the railroad company during the term ·of 50 years. The capital stock of the bridge company was increased to ˙$400,000. Its bonds to the amount of $400,000 were issued and secured by a mortgage on the bridge. The bonds and 399 shares of the stock were, on May 1, 1902, sold to the contractors in consideration of their construction of the bridge, and on the same day they assigned and delivered them to the Colonial Trust Company for $310,000, which the latter company agreed to pay them only in the event that it obtained the same from the subscribers for the bonds and stock under the proposed plan. The bridge was completed in 1904. The Commonwealth Trust Company has succeeded to the rights and has assumed the liabilities of the Colonial Trust Company. All. the parties that have been mentioned except the complainant and the railroad company are defendants in this suit. .

In this state of the case the complainant seeks a rescission of his purchase of the stock and bonds because of the misrepresentations that the stock of the bridge company would be full-paid and nonassessable; that the bridge company had a contract with the railroad company on April 24, 1902, to the effect that it should receive 5 cents for every passenger carried across the bridge by the railroad company; and that the latter company should not receive any more for their transportation. The defendants challenge the bill on the ground that the complainant has an adequate remedy at law by an action to recover of the trust companies the price he paid for his bonds and stock or the damages which have resulted to him from the false representations he avers. But the adequate remedy at law which will deprive a court of equity of. jurisdiction is a remedy as certain, complete, prompt and efficient to attain the ends of justice as the remedy in equity. Boyce's Ex'rs v. Grundy, 3 Pet. 210, 215, 7 L. Ed. 655; Williams v. Neely, 134 Fed. 1, 10, 67 C. C. A. 171, 180, 69 L. R. A. 232; Brown v. Arnold, 131 Fed. 723, 727, 67 C. C. A. 125, 129; Wiemer v. Louisville Water Co. (C. C.) 130 Fed. 246, 250; Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 26 C. C. A. 389. If the complainant's purchase was induced by fraudulent misrepresentations of material facts, he is entitled to an avoidance of that purchase, not only against the trust company, but also against the bridge company, to a decree that he is not the owner of the stock of the latter company and is not liable to pay to it any assessment or other claim whatever. This relief against the bridge company he cannot obtain in an action at law against the trust companies, and for this reason his remedy at law is neither adequate, nor is it as complete and efficient as the remedy in

equity which he invoked, and the dismissal of the bill cannot be sustained upon that ground.

Are the misrepresentations alleged in the bill adequate to invoke a rescission of the purchase? Actual or legal fraud is an essential element of those misstatements which will induce a court of equity to set aside a contract or a sale. The subject of such misrepresentations must be the existence or nonexistence of facts at the time the statements were made. Neither promises, nor prophecies, nor expressed opinions or beliefs, concerning future events or conditions, will sustain a rescission of a contract or a sale. The facts concerning which the misrepresentations are made must be material to the contract or transaction. They must be facts concerning which the victim is ignorant, and of which a person of ordinary sagacity and diligence in his place would have acquired no knowledge. The false statements or representations must be well calculated to deceive and to induce the victim to enter upon the trade, and they must accomplish that result and cause him substantial damage. Let us try the representations set forth in this bill by these established tests.

Conceding, without deciding, that the stock of the bridge company is not full-paid and that it is assessable, the misrepresentations that it would be full-paid and nonassessable were made in April, 1902. They had no relation to the existence or nonexistence of any then present fact. They were promises or opinions concerning future transactions. The stock had not then been issued, and the complainant knew it. Not only this, but the plan which the complainant had examined and under which he subscribed and paid for his securities clearly portrayed the method which was afterwards pursued of issuing the stock and bonds, of delivering them to the contractors for the construction of the bridge, and then of selling the bonds and a majority of the stock to the subscribers for less than the par value of the bonds alone. This disclosure was ample notice to a man of ordinary prudence that an owner of stock thus secured might incur liability to pay for it, and notice sufficient to put a person of ordinary prudence and diligence on inquiry is notice of all the facts which a reasonable investigation would disclose. The rule, caveat emptor, portrayed the duty and the obligation of the complainant, and ample time and opportunity intervened between the dates of these representations and the payment of his subscription to have enabled him to ascertain how the stock was issued and what the legal liabilities of the holders thereof became.

The statements that the stock would be full-paid and nonassessable present no basis for a rescission of the complainant's purchase, because they were not statements of the existence or nonexistence of any then present fact, but mere promises or prophecies concerning future events. Union Pac. R. Co. v. Barnes, 12 C. C. A. 48, 50, 64 Fed. 80, 82; Chicago & N. W. R. Co. v. Wilcox, 54 C. C. A. 147, 116 Fed. 913; Daniels v. Benedict, 97 Fed. 367, 380, 38 C. C. A. 592, 605.

The second representation upon which reliance is placed was that in April, 1902, the bridge company had an extremely valuable contract with the railroad company whereby the latter had agreed that the bridge company should receive 5 cents for every passenger which the

railroad company carried across the bridge. No damage, however, resulted to the complainant from the absence of this contract, because on June 3, 1902, and more than a year before the bridge was constructed, the railroad company made such a contract with the bridge company for the term of 50 years, and a misrepresentation which causes no damage presents no ground for an action for fraud and no basis for equitable relief.

The third alleged misrepresentation is that the bridge company had a contract with the railroad company that it would not charge or collect more than 5 cents for the transportation of each passenger over the bridge. The claim of this statement rests upon the sentence, "The bridge company through its contract gets all the 5-cent arbitrary over the river," in the letter of April 21, 1902, and upon the averment in the bill that the Colonial Trust Company in its letter of April 24, 1902, "stated that said bridge company held an extremely valuable contract with said railroad company securing to said bridge company an arbitrary charge of 5 cents per passenger on all passengers taken across said bridge by the cars of said railroad company, and (that said 5-cent arbitrary was the entire fare to be charged for such carriage of passengers, of which said railroad company should receive no part)." Counsel disagree in the interpretation of this sentence of the bill. The complainant's counsel insist that the averment here is that the provision in the clause inclosed in a parenthesis above was secured by the contract, while counsel for the defendants argue that it is an allegation that this statement was contained in the letter. The grammatical construction of the sentence and the relation of its parts sustain the latter contention. The participle "securing" governs the word "charge" which follows it, and whatever the pleader averred that the contract evidenced. He did not write, and did not intend to write, "and (securing) that said 5-cent arbitrary was the entire fare to be charged"; but he wrote, and must have intended to write, that the trust company "stated that said bridge company held," etc., and that (it stated) "that said 5-cent arbitrary was the entire fare to be charged." The averment of the bill, therefore, is that this statement was not of an existing fact, but of an opinion or belief of the writer of the letter concerning a future course of action, and for that reason it presents no cause for a rescission of the purchase.

The only ground remaining to sustain the claim that the trust company stated that the railroad company had agreed that it would not charge or collect more than 5 cents per passenger for transportation over the bridge is the averment in the letter of April 21, 1902, that "the bridge company, through its contract, gets all the 5-cent arbitrary over the river." Here is no statement that the railroad company will not receive more. If there is any representation here that the railroad company had agreed that it would never charge or collect more than 5 cents per passenger for transportation over the bridge, it is not expressed, but arises by implication from the statement that the bridge company gets all the 5-cent arbitrary. Proof of fraudulent representations requisite to avoid a contract or a sale and of their

materiality must be clear and satisfactory, and it is by no means clear that any implication that the railroad company would not collect more than 5 cents per passenger for carrying the passengers over the bridge arose from the statement under consideration. Nor is it plain that such an implication, if it existed, constituted a material inducement to the complainant's subscription or purchase. It is rather a possibility than an established material fact, and its existence is too doubtful, its materiality too shadowy and uncertain, to invoke an avoidance of an executed sale.

There were other questions presented in the briefs and arguments of counsel, but none that are material to the decision of this case, in view of our conclusion that there is no substantial equity in the bill.

The decree below is accordingly affirmed.