## GLEASON v. THAW.

(Circuit Court of Appeals, Second Circuit.    May 12, 1913.)

No. 223.

**1. FRAUDS, STATUTE OF (§ 23*)—ORIGINAL PROMISE—NECESSITY OF WRITING.**

Defendant's son, having been indicted for murder, employed plaintiff as an attorney to defend him under contract made July 7, 1906, which terminated June 1, 1907. Prior to its termination, the son paid plaintiff $30,100 on account of services, and plaintiff later received $6,800 from the son's estate in bankruptcy, whereupon plaintiff sought to recover the balance of $80,000 remaining unpaid from defendant, alleging that, while plaintiff began to render services on account of his contract with her son, he stipulated, as a condition of his continuing to do so and extending credit until after the trial, that he should be protected by good security, or by defendant agreeing to pay the bulk of the other expenses on her own account, and not charge them against the son unless as advances; that defendant agreed that she, in her own behalf, would make all the disbursements, other than payments to plaintiff, that were necessary, and to be chargeable against the son as advancements on what he would receive at her death, one-third thereof to be remitted under her will, subject to termination, however, by the defendant on notice to plaintiff. *Held,* that such agreement was not to answer for the debt or default of another, but was an original contract on defendant's part, and was not objectionable because not in writing.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 18, 19; Dec. Dig. § 23.*]

**2. CONTRACTS (§ 312*)—BREACH.**

Defendant's son having been indicted for murder, and having employed plaintiff to defend him, defendant agreed to make all disbursements, other than payments to plaintiff, that were necessary, the same to be charged against her son as advancements on what he would receive from her at her death, one-third, however, to be remitted under her will; the agreement to be subject to termination, however, at defendant's election on notice to plaintiff. Defendant paid all the expenses other than for plaintiff's services, taking notes from the son therefor, and long after plaintiff's contract had terminated these notes were proved against the son's estate in bankruptcy. Plaintiff thereupon charged that defendant failed to inform plaintiff that the son had given the notes, and that he would be liable for a portion of the sum so paid by her. *Held,* that the giving of the notes was not a breach of plaintiff's alleged contract with defendant, so as to render her liable for the unpaid portion of plaintiff's fee.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1279½; Dec. Dig. § 312.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. FRAUD (§ 13*)—MISREPRESENTATIONS—EFFECT OF WILL.

Where defendant represented to plaintiff that defendant's son, under an indictment for murder, who had employed plaintiff to defend him, had a clear annual income of over $30,000 from his father's estate, which was his own without restriction, such statement was not falsified by the fact that the will provided that the income should not be liable for his debts, since the circumstance that the son's creditors could not reach the same made it more emphatically "his own," and he could pay his debts with it if he chose, or spend it otherwise.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 3–5; Dec. Dig. § 13.*]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon a writ of error to review a judgment of the District Court, Southern District of New York. After the jury was impaneled defendant moved for judgment upon the pleadings and the concession of the plaintiff that his cause of action was not based upon an agreement in writing. This motion was granted and exception reserved.

See, also, 196 Fed. 359, 116 C. C. A. 179.

J. B. Gleason, of New York City, pro se.

Kellogg & Rose, of New York City (L. L. Kellogg and A. C. Pette, both of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. H. K. Thaw, defendant's son, was indicted for murder. Between July 7, 1906, and June, 1907, plaintiff rendered services to him as attorney and counsel in reference to a trial upon such indictment. It is alleged that these services were worth $80,000; they were rendered under a contract with H. K. Thaw made July 7, 1906, which contract apparently terminated June 1, 1907. Prior to its termination H. K. paid $30,100, on account of such services; plaintiff has also received $6,800, from H. K.'s estate in bankruptcy. By this action he seeks to recover a sum of money equal to the amount of the unpaid balance of the $80,000, as damages from H. K.'s mother, the defendant here.

It is not entirely clear just what is the plaintiff's theory of recovery. When he made his contract with H. K. the latter was in receipt of an income of $30,000 from his father's estate. While this might be sufficient to pay for plaintiff's prospective services, he apparently doubted if it would pay all the expenses of the coming trial. Therefore, although he began to render services on the making of his contract with H. K., he stipulated as a condition of his continuing to do so and extending credit until after the trial that he should be protected by good security, or by defendant agreeing to pay the bulk of the other expenses on her own account and not chargeable against H. K. unless as advances.

In this condition of affairs it is alleged that plaintiff and defendant about August 8, 1906, entered into an agreement as follows: Defendant agreed that she would herself, in her own behalf as head of

the family, make all the disbursements (other than payments to plaintiff) that were expedient on account of the indictment, and that such payments should be chargeable against her son only as advancements: i. e., advancements on what he would receive at her death, one-third of such advancements to be remitted under her will. This agreement evidently was to be susceptible of termination by defendant, for it is alleged that one of its conditions was that "if there should be any change from her agreement, she [defendant] should at once inform the plaintiff." It is contended that the consideration of this agreement was the continuance of plaintiff's rendition of professional services to H. K. under the contract with him and the extension of credit therefor till the summer of 1907.

[1] The concession that this agreement was not in writing is immaterial, since it is undisputed that it was not an agreement to answer for the debt or default of H. K. Thaw. It is also conceded that it was not an agreement that defendant herself would pay plaintiff for his services, independently of H. K. Its legal effect need not be further discussed, since we do not find that a breach of it is substantially alleged.

[2] What happened was this: Defendant did pay all these other expenses. For the money so paid from time to time she took notes from H. K. On August 7, 1908, long after plaintiff's contract of employment with H. K. had terminated, and after the trial for which he was retained, H. K. filed his petition in bankruptcy. These notes were proved against his estate by defendant. The giving and taking of these notes was not a breach of plaintiff's alleged contract with defendant; they were a convenient way of insuring a statement binding upon H. K. of exactly what the advancements were, with which he should be charged, when his mother's estate should come to be administered after her death. The averments of the complaint, therefore, that defendant failed to inform plaintiff that H. K. was giving her these notes "that he should be liable for a portion of the sums so paid by her" charge no breach. H. K., under the terms of the alleged agreement sued upon, *was* to be liable to her for two-thirds of all these moneys paid out by his mother, although he was to be given credit until after her death. When on August 7, 1908, defendant decided to file these notes as claims against H. K.'s estate she did "change from her agreement," as the alleged contract provided she might do. The complaint does not aver whether or not defendant notified plaintiff of this change, when she made it; since that was long after the termination of the contract between plaintiff and H. K., and long after the term (the summer of 1907) to which plaintiff had agreed to extend credit to H. K., the pleader probably thought notification then was immaterial.

[3] Upon the argument plaintiff would not state definitely whether he sought to recover upon his alleged contract, or upon some tort; indeed, he contended that he relied on both. So far as we can make out, the only alleged tort consisted in statements made by defendant as to H. K.'s financial condition. There is no averment of any intent to defraud, or that defendant knowingly made any false representa-

tion of fact. As stated before, H. K. had a clear annual income of over $30,000 from his father's estate. This was under a will which provided that such income should not be liable for his debts; a valid provision under the laws of Pennsylvania. The only statement by defendant with regard to this, which is alleged, is that H. K.'s income from his father's estate was "his own without restriction" of any kind. This seems to be a matter of opinion rather than a matter of fact; whether or not it was his own without restriction would depend upon the construction of his father's will and of the laws of Pennsylvania. But certainly the statement was not false. The income *was* "his own without restriction"; the circumstance that his creditors could not reach it, made it even more emphatically "his own." He could pay his debts with it if he chose, or he might spend it otherwise if he preferred.

We find no cause of action set forth in the complaint.

Judgment affirmed.