tion of fact. As stated before, H. K. had a clear annual income of over $30,000 from his father's estate. This was under a will which provided that such income should not be liable for his debts; a valid provision under the laws of Pennsylvania. The only statement by defendant with regard to this, which is alleged, is that H. K.'s income from his father's estate was "his own without restriction" of any kind. This seems to be a matter of opinion rather than a matter of fact; whether or not it was his own without restriction would depend upon the construction of his father's will and of the laws of Pennsylvania. But certainly the statement was not false. The income *was* "his own without restriction"; the circumstance that his creditors could not reach it, made it even more emphatically "his own." He could pay his debts with it if he chose, or he might spend it otherwise if he preferred.

We find no cause of action set forth in the complaint.

Judgment affirmed.

---

ATLAS PORTLAND CEMENT CO. v. P. DOUGHERTY CO.

(Circuit Court of Appeals, Second Circuit. May 12, 1913.)

No. 239.

SHIPPING (§ 121*)—DAMAGE TO CARGO—LIABILITY OF VESSEL—UNSEAWORTHI-NESS.

A cargo of cement, carried by respondent's barge from New York to Norfolk, Va., was badly damaged by water during the voyage. No worse weather was encountered than should have been expected, but the barge twice broke her rudder and pumping engine, although neither of two other barges in the tow was injured. The barge had never before made a sea voyage, but had been employed in inland waters, and her hatch covers were not sufficient to keep out the water which washed over her when her rudder was gone. *Held*, that the damage was not due to perils of the sea, but to her unseaworthiness for the voyage, for which respondent was liable.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 225, 449–451, 466; Dec. Dig. § 121.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Atlas Portland Cement Company against the P. Dougherty Company. Decree for libelant, and respondent appeals. Affirmed.

The following is the opinion of the District Court, by Veeder, District Judge:

This is an action by the Atlas Portland Cement Company against the P. Dougherty Company to recover for damage to a cargo of cement shipped by the libelant from Hudson, N. Y., to Norfolk, Va., on board the respondent's barge Patuxent. The bill of lading acknowledged receipt on board at Hudson of 28,000 bags of Portland cement in apparently good order and well conditioned, and recited an undertaking to deliver the cargo in like good order and condition at Norfolk, the dangers of the seas only excepted. Upon arrival at Norfolk, the cement was found to be damaged by water; much of it had hardened and become valueless. To the claim made by the libelant

for the damage sustained, the respondent answers that the damage was caused by perils of the sea.

The barge Patuxent, together with two other barges, started for Norfolk on October 26, 1910, in tow of the tug Margaret. On the following morning, off Tucker's Beach, high wind and heavy sea were encountered, in which the Patuxent labored heavily and shipped large quantities of water. Before noon her tiller broke, rendering her unmanageable. The pumps were kept in constant use until early in the afternoon, when the gasoline engine broke down. The Margaret thereupon made for the Delaware Breakwater, where the Patuxent was pumped out, a new tiller was obtained, and the gasoline engine was repaired. The master of the barge "apprehending damage and loss," noted a protest. The tug and tow left the Delaware Breakwater on the evening of November 1st. On the morning of November 3d, high wind and heavy sea were encountered a few miles off the tail of Shoe Lightship, and again the tiller gave way, the gasoline engine broke down, and the Patuxent shipped large quantities of water. After other vicissitudes the barge finally reached Norfolk. When the hatches were opened, the cargo was found to be badly damaged by water.

There is no direct evidence in the case to show where the water entered. Although the master of the Patuxent had asserted in his protest at the Delaware Breakwater that the barge had sprung a leak, no leak was found when she was examined at Norfolk. The only evidence of any leak in her hull is that when she was examined in dry dock six months later a slight leak was found in her bottom. There was some testimony to the effect that the top layer of cement in at least three of the hatches had hardened from being wet with salt water, indicating that the water had entered through the hatches. The burden rested upon the respondent to show that the barge was seaworthy at the outset of her voyage, and that the damage was caused by a peril of the sea. The real issue in this case is, therefore, whether the respondent has sustained that burden. I am of the opinion that it has not.

In the first place, the evidence fails to show that the Patuxent encountered any peril of the sea. None of the witnesses called by the respondent placed the velocity of the wind any higher on the Beaufort scale than a fresh gale; they put it between 40 and 50 miles an hour. In his protest at the Delaware Breakwater the master of the Patuxent stated merely that the "wind breezed up to a southwest gale, with heavy cross-seas, causing the Patuxent to labor heavily." The barge showed no evidence of severe strain. Her seams were not opened; her deck fittings were not carried away; no windows or doors were broken in. Neither of the other barges in the tow nor the tug sustained any damage. In other words, there is nothing to indicate that the weather encountered was anything beyond what was to be expected along the coast in the autumn. And it must be noted that weather which the respondent claims to have been so extraordinary that it could not have been foreseen was encountered twice in one week.

The primary cause of the damage to the cargo was the breakdown of the steering gear, causing the barge to wallow in the trough of the sea, with her deck awash. The Patuxent was a flat-bottomed barge of slight draft, equipped with what is known as a barn-door rudder. A severe strain was therefore put upon the tiller, which seems to have been very light in view of the use to which it was put. The respondent offered no evidence even tending to show that this appliance, which broke twice during a single trip, was of sufficient size and strength for the use to which it was put. The tiller was a small piece of iron, which could have been easily stowed away; yet the Patuxent carried no extra tiller for emergency. Moreover, there is no proof that the barge had ever undertaken a coastwise voyage with such a heavy cargo. She had seen service in inland navigation, for which alone her build and equipment would seem to fit her. Apparatus which might suffice to control her in inland navigation, or even in coastwise navigation with a light cargo, might be wholly insufficient in coastwise navigation with a heavy cargo of cement.

When the gasoline engine broke down, the pumps were useless. This engine was located in an exposed position and was entirely without protection.

·Consequently it was broken when the barge shipped water, as should have been foreseen and provided against. Moreover, there is no proof that the engine was in good repair, either at the beginning of the voyage or after leaving the Delaware Breakwater.

The hatch coverings on the Patuxent were merely laid on top of the hatch coamings. Not being morticed, they could not be caulked and made watertight. Under such conditions much reliance would necessarily have to be placed upon the tarpaulin coverings. But this barge had only one tarpaulin on her hatches. There is evidence in this case tending to show that more than one tarpaulin covering is regularly used as a general precaution by more seaworthy boats than the Patuxent. In her case the use of an additional tarpaulin at least would seem to have been a necessity. Without it, it was almost inevitable that, when her deck was awash, water would enter through the hatches.

Upon a consideration of all the evidence I find that the respondent has failed to sustain the burden of proof which rested upon it under the circumstances. The libelant may therefore have an interlocutory decree, and a reference to determine the damages.

James J. Macklin and De Lagnel Berier, both of New York City, for appellant.

Harrington, Bigham & Englar and D. R. Englar, all of New York City, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

PER CURIAM. Decree affirmed, on opinion of Judge Veeder.

---

### KELLER v. LOYLESS.

(Circuit Court of Appeals, Second Circuit. May 12, 1913.)

No. 220.

1. LIBEL AND SLANDER (§ 6*)—WORDS LIBELOUS PER SE.

A publication criticising a prior publication by plaintiff in a trade journal, and charging plaintiff with being a traducer of the bottling trade traveling man, and desiring to eliminate him from the trade, but charging plaintiff with no offense, act of immorality, etc., was not libelous per se.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 3–16; Dec. Dig. § 6.*]

2. LIBEL AND SLANDER (§ 89*)—WORDS NOT LIBELOUS PER SE—SPECIAL DAMAGES.

Where an alleged publication was not libelous per se, a complaint failing to specifically charge that plaintiff suffered special damage was insufficient, and properly dismissed.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 213, 214; Dec. Dig. § 89.*]

In Error to the District Court of the United States for the Southern District of New York.

Action by William B. Keller against Donald A. Loyless for publishing an alleged libelous article of and concerning plaintiff. The

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes