### WRIGHT v. BROWNLEE et al.

(District Court, E. D. Pennsylvania. May 16, 1913.)

#### No. 757.

PATENTS (§ 328\*)—VALIDITY—PRIOR INVENTION BY ANOTHER—GAS HEATED SAD IRON.

The Wright patent, No. 1,001,331, for a gas heated sad iron, claims 4 and 5, *held* invalid on the ground that the device therein shown was not the invention of the patentee but in all essential respects of one of the defendants, who used due diligence in perfecting his invention and had completed and perfected it prior to the filing of a caveat by the patentee, who had been shown the same and had full knowledge of it.

In Equity. Suit by George H. Wright against James H. Brownlee and Charles Weidemann. Decree for defendants.

Robert M. Barr, John Monaghan, and E. Hayward Fairbanks, all of Philadelphia, Pa., for complainant.

P. P. Conway, Daniel J. McBride, and W. Preston Williamson, all of Philadelphia, Pa., for respondent.

THOMPSON, District Judge. At the argument and in his brief, the complainant relied upon claims 4 and 5 of his patent No. 1,001,331, and charges that the defendants have infringed those claims. The defendants admit that if claims 4 and 5 of the patent are valid they have infringed. They claim, however, that claims 4 and 5 are not valid because (1) the complainant was not the inventor of the gas heated iron covered by the patent in suit; (2) the complainant willfully appropriated the invention of James H. Brownlee, one of the defendants, and illegally secured thereon the patent in suit; (3) Brownlee was the first and sole inventor of the device covered by

claims 1, 2, 4, and 5 of the patent in suit; and (4) Brownlee never abandoned the invention.

The specification of complainant's patent sets out:

"This invention relates to improvements in sad irons, and more particularly to a gas heated iron, and has for an object to provide an iron wherein the heating devices are so positioned and arranged in co-operation with other adjuncts of the iron as to provide an effective heating of the bottom of iron and limit the distribution of heat more particularly thereto."

The claims relied on are as follows:

"4. In a device of the character stated, a hollow body, a plurality of wings therein, a deflector adjacent said wings and forming therewith a heating chamber, a burner having outlets disposed to project a flame longitudinally of said chamber, and a plurality of projections disposed in the path of said flame.

"5. In a device of the character stated, a hollow body, a plurality of wings therein, a deflector adjacent said wings and forming therewith a heating chamber, a burner having outlets disposed to project a flame longitudinally of said chamber and a plurality of vertically disposed projections integral with said hollow body positioned in the path of said flame."

To quote from the complainant's brief:

"That complainant did not intend to limit his construction to the exact form shown in the Patent Office drawing is apparent from the specification, and therefore claims 4 and 5, when interpreted, should be given a construction as broad as their scope is capable of. Furthermore, it is obvious that the inventor intended the claims to cover all equivalent structures capable of producing the same result in the same combination."

And in his specification he states:

"It is to be understood that the various instrumentalities of which my invention consists can be variously arranged and organized, and that my invention is not limited to the precise arrangement and organization of these instrumentalities as herein shown and described."

The admission by the defendants that, if claims 4 and 5 are valid, they are guilty of infringement, limits the issue to the question whether or not Wright was the inventor of the gas heated iron as claimed in his patent. It must be conceded that the defendants' alleged infringing device, complainant's "Exhibit 3," does not reproduce in each of its details the device shown by the complainant's drawing nor the arrangement and organization of the instrumentalities described. It is contended, however, by the complainant, and conceded by the defendants, that an analysis of claims 4 and 5 of the patent in suit and a comparison of the complainant's iron and defendants' iron, complainant's "Exhibit 3," demonstrate that they possess the following identical elements common to claims 4 and 5: A hollow body; a plurality of wings therein; a deflector adjacent said wings and forming therewith a heating chamber; a burner disposed to project a flame longitudinally of said chamber. They also possess in common the element in claim 5, a plurality of vertically disposed projections integral with said hollow body positioned in the path of said flame; and the broader element of claim 4, a plurality of vertically disposed projections positioned in the path of said flame.

In view of the complainant's declaration disavowing an intention

to limit his invention to the exact form, arrangement, and organization of the component elements described in his patent or in his drawing, if the defendants have shown that, prior to the time of filing complainant's caveat November 2, 1909, the defendant Brownlee had invented a device containing all of the elements set forth in claims 4 and 5 and had not abandoned the same, but used due diligence in adapting and perfecting his device and had perfected and put into use as a development of his prior invention before the obtaining of the complainant's patent such perfected device, and have established the fact that prior to November 2, 1909, the date of the complainant's caveat, and prior to the application for his patent, he (Wright) had knowledge of the defendant's invention, the inference would seem to be inevitable that the defense that the complainant was not the inventor has been sustained.

The defendants have offered in evidence as defendants' "Exhibit A" an iron, an analysis of which shows every element of claims 4 and 5 of the Wright patent. Of the elements in claim 4, a hollow body; a plurality of wings therein; a deflector adjacent said wings and forming therewith a heating chamber; a burner disposed to project a flame longitudinally of said chamber; a plurality of vertically disposed projections positioned in the path of said flame. And the element in claim 5, a plurality of vertically disposed projections integral with said hollow body positioned in the path of said flame.

The defendants offered in evidence another iron, "Exhibit E," which is similar in construction to complainant's "Exhibit 3," which is claimed to be an infringement, with the exception that there is a channeled projection in the bottom of complainant's "Exhibit 3," which in defendants' "Exhibit E" is not present, but in place of which are two projections positioned in the path of the flame.

I find from the evidence that the defendant Brownlee, at least as early as 1907, began making experiments in gas heated sad irons, and during 1907, 1908, and 1909 had patterns made and took them to the foundry of the Bernstein Bedstead Manufacturing Company and there had castings made from these patterns; that during that time and up to November, 1909, the complainant, Wright, was foreman of the Bernstein foundry and had charge of making the castings; that subsequent to November, 1909, the complainant was employed as superintendent at the foundry of Smith & Hansell; and that the defendant Brownlee from that time took his patterns to that foundry and had castings for gas heated irons made there. During all of the time that Brownlee was experimenting and having his castings made at these respective foundries, he consulted Wright about his experiments and showed him the patterns for "Exhibit A" and "Exhibit E." The drawings for these castings passed through the hands of the complainant. Mr. Brownlee had patterns and had castings made for other forms of irons, which were failures, and had shown these irons also to Mr. Wright. "Exhibit A," which was cast at the Bernstein foundry not later than June, 1909, was shown to Mr. Wright in the presence of Mr. Turner, who made the pattern for it in June, 1909, and saw it as a completed iron during the latter part of August, 1909. At that time

Mr. Wright and Mr. Brownlee went to Mr. Turner's place of business and all examined Exhibit A and talked together about its practicability. Mr. Wright declared at that time that the iron "would be no good as it then stood and advised Mr. Brownlee not to spend any more money to cover his claim on same" (Turner's testimony). Mr. Brownlee also showed the iron, "Exhibit A," to Mr. Wright at the former's house during the summer of 1909, and the improvements on it were pointed out to Mr. Wright and Mr. Moseley, a foundryman, who had made castings from the pattern of "Exhibit A" in July, 1909.

During 1909, Brownlee was also experimenting with "Exhibit E." The pattern for that iron was made by a pattern maker named Lyons in the spring of 1909, and the castings for that iron were made at the Bernstein foundry while Mr. Wright was foreman at that foundry and had control of the sketchings of the patterns. Mr. Brownlee had, pursuant to complainant's advice, abandoned "Exhibit A" as the model for his iron, and after November, 1909, followed Mr. Wright to Smith & Hansell's foundry and there had castings made for "Exhibit E." The patterns and castings all passed through the hands of Mr. Wright as superintendent of the foundry. Castings were made at the Smith & Hansell foundry for "Exhibit E" on May 3, May 9, and May 18, 1910. An entry was made as to the castings on May 3, 1910, in the shipping book of the firm in the complainant's handwriting and signed by him. A few of the "Exhibit E," irons were made at the Smith foundry in June, 1910, and 300 or 400 of them the following April, 1911. From the testimony of Mr. Brownlee, which is corroborated in all essential respects, it is apparent that the complainant was thoroughly familiar with defendants' "Exhibit A" prior to the filing of his caveat in November, 1909, and also that he had knowledge prior to that date of defendants' "Exhibit E," and that he became more thoroughly familiar with defendants' "Exhibit E" prior to his application for patent October 1, 1910. The identification of these exhibits with the patterns and castings is based upon testimony of the highest class, that of disinterested witnesses who had practical knowledge and experience in examining and making patterns and castings. Exhibits "A" and "E" were identified by Mr. Bernstein, a foundryman, and the pattern for "Exhibit A" by Mr. Turner, a pattern maker. "Exhibit A" was also identified by Mr. Moseley, a foundryman; "Exhibit E" by Mr. Lyons, a pattern maker, by Mr. Smith, a mechanical engineer and foundryman, of the firm of Smith & Hansell, and by Mr. Gunther, a clerk at the Smith & Hansell foundry. As to these exhibits being made prior to the filing of complainant's caveat in November, 1909, there can be no doubt because the castings were made at the Bernstein foundry where Mr. Brownlee had no castings made after Mr. Wright left his employment there. As against this evidence the testimony of the complainant stands alone except so far as it is corroborated by his caveat and application for patent. In denying that he copied the conception of Mr. Brownlee, his language is:

"I wish to state that it was not from Mr. Brownlee's patterns and castings that I got any ideas, but it was from the ideas that he failed on."

205 F.—34

It is apparent from all the evidence that Wright had knowledge prior to November, 1909, of defendants' Exhibits "A" and "E"; that, while at that time Brownlee abandoned the experiment embodied in "Exhibit A," he had not abandoned "Exhibit E," which embodies the same principles as "Exhibit A," but was using due diligence to complete and perfect it; and that he had completed and perfected it prior to the complainant's application for patent. Inasmuch as the elements embodied in "Exhibit E" are in all essential respects identical with those in the defendants' iron, complainant's "Exhibit 3," alleged to be an infringement, it must be held that what would be an infringement if complainant's claims 4 and 5 were valid is an anticipation of those claims.

In view of the circumstances under which "Exhibit A" was abandoned, with knowledge of the complainant and upon his advice, I do not consider that abandonment very material in the case. Complainant insists that complainant's "Exhibit 3," defendants' iron, is an infringement, and that the mere difference in arrangement and organization of the various instrumentalities or parts of the iron do not under his claims affect the question of infringement. As pointed out, the arrangement of the parts in defendants' "Exhibit E" are similar to those in the alleged infringing iron, and complainant's patented iron, therefore, differs from "Exhibit E" only in the arrangement and organization of the respective parts or instrumentalities. If the arrangement of the component parts of complainant's patent differing from the arrangement in "Exhibit E" were novel and claimed to be particularly effective in heating the iron to the best advantage, such arrangement might be claimed to be an invention; but it appears that the arrangements in defendants' irons, complainant's "Exhibit 3" and defendants' "Exhibit E," are equally effective, and complainant disclaims in his patent intention to limit his construction to any exact form or precise arrangement and organization of the instrumentalities described.

It is apparent, therefore, that what the complainant, Wright, has accomplished in his patented iron beyond what he learned from Brownlee's irons, is within the domain of mere construction and mechanical skill, and that the elements embodied in his claims are not his invention, but have been derived by him from the ideas of Brownlee as shown in "Exhibit E" and "Exhibit A." This case does not come within the rule laid down in those cases where two independent inventors have been engaged at the same time in experimenting, developing, and perfecting their inventions, and the prior inventor has been excluded from the right to a patent by reason of burying his secret for a number of years and preventing the public from having the use of his invention as against one who has made the same invention and used due diligence in applying for and obtaining a patent and thereby giving the public the benefit of his discovery. Wright is not in the position of an independent inventor, and if Brownlee concealed his ideas while experimenting he undoubtedly did not conceal them from Wright. Brownlee's ideas, which were embodied in defendants' Exhibits "A" and "E" in 1909 and known to the complainant prior to filing

his caveat, were developed and put into practical use early in 1910 and 1911, and, during the intervening time, Brownlee was using reasonable diligence in adapting and perfecting his invention.

For the reasons stated, I am of the opinion that claims 4 and 5 of the complainant's patent No. 1,001,331 are invalid. A decree will be entered· dismissing the bill, at the cost of the complainant.