## GLEASON v. THAW.

(Circuit Court of Appeals, Second Circuit.    June 23, 1916.)

No. 301.

1. TRIAL ⟨⟩165—DISMISSAL AT TRIAL—EVIDENCE.
    Where the complaint was dismissed at the close of plaintiff's case, plaintiff's evidence must be accepted as true.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 373, 374; Dec. Dig. ⟨⟩165.]

2. APPEAL AND ERROR ⟨⟩1099(1)—DECISIONS OF APPEAL—EFFECT.
    In an action at law, previous decisions of an appellate court are not findings of fact, nor are conclusions used for the purpose of argument in directing the formulation of pleadings equivalent to a decision upon the meaning of statements to be included in the pleadings.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4370, 4374; Dec. Dig. ⟨⟩1099(1).]

3. FRAUD ⟨⟩17—ACTIONS—MISREPRESENTATIONS.
    Where counsel for defendant's son made inquiries of defendant concerning the son's resources and rights in his father's estate, for the purpose of determining whether he would require security for his fees, defendant, in so far as she was speaking of existing facts, was bound to state those facts fully and truly, and a failure rendered her liable.
    [Ed. Note.—For other cases, see Fraud, Cent. Dig. § 15; Dec. Dig. ⟨⟩17.]

4. FRAUD ⟨⟩4—ACTIONS—LIABILITY.
    To render one liable for misrepresentations, it must have been the intent of the one making them that they should be relied on.
    [Ed. Note.—For other cases, see Fraud, Cent. Dig. § 2; Dec. Dig. ⟨⟩4.]

5. BANKRUPTCY ⟨⟩51 — ADJUDICATION — CONCLUSIVENESS — ALLOWANCE OF CLAIMS.
    Where defendant's claims against the estate of her son, who became a bankrupt, were allowed, such adjudication is conclusive as to the existence of the debts, and cannot be questioned in a proceeding by another creditor of the son against defendant.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 49; Dec. Dig. ⟨⟩51.]

6. FRAUD ⟨⟩12—MISREPRESENTATIONS—ACTION—RIGHT TO MAINTAIN.
    An action for damages for misrepresentations as to defendant's intentions for the future cannot be maintained.
    [Ed. Note.—For other cases, see Fraud, Cent. Dig. § 14; Dec. Dig. ⟨⟩12.]

7. FRAUD ⟨⟩27—ACTIONS—MISREPRESENTATIONS.
    Where defendant represented to plaintiff that her son, who had employed plaintiff to defend him from a criminal charge, had a clear annual income of over $30,000 his father's estate, which was his own without restriction, such statement was not false by reason of the success of the son in obtaining a discharge in bankruptcy, who in that manner was enabled to escape payment of plaintiff's fees.
    [Ed. Note.—For other cases, see Fraud, Cent. Dig. § 8; Dec. Dig. ⟨⟩27.]

In Error to the District Court of the United States for the Southern District of New York.

Action by John B. Gleason against Mary C. Thaw.    There was a judgment dismissing the complaint, upon order granting a motion to

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that effect at the close of plaintiff's case, and plaintiff brings error. Affirmed.

See, also, 223 Fed. 527, 139 C. C. A. 75.

John B. Gleason, of New York City, pro se.

Kellogg & Rose, of New York City (L. L. Kellogg and Alfred C. Pette, both of New York York City, of counsel), for defendant in error.

Before COXE and WARD, Circuit Judges, and CHATFIELD, District Judge.

CHATFIELD, District Judge. The plaintiff in this action seeks to recover the sum of $53,000. The son of the defendant had included in his schedules in voluntary bankruptcy the agreed amount to be paid by him to the plaintiff for certain services rendered to him in connection with the trial of an indictment against him in the county of New York.

It appears that the plaintiff received, prior to the bankruptcy, some payment upon the amount due, and also a dividend in the bankruptcy proceedings. These payments were taken into account in computing the balance for which the present action was instituted, and it appears from the record that no further payments can be expected from the bankrupt himself, as the final dividend has been declared and a discharge granted.

This action is based upon the charge of false representations as to matters of fact alleged to have been within the knowledge of the defendant at the time the representations were made. It is further alleged that the defendant knew the representations to be false, and that the plaintiff was relying upon her representations in undertaking the conduct of the litigation above referred to without deposit or other security, but solely upon a contract with the son of the defendant.

[1] The language which is attributed to the defendant, and which (as the judgment was rendered upon the plaintiff's statement) must be taken as true, was used by the defendant in a conversation with the plaintiff on August 8, 1906, in the city of New York. The plaintiff told the defendant that her son desired him to act as his attorney, and discussed certain details as to the course of action to be pursued. They spoke of disbursements already made by the defendant for attorneys, expert fees, etc., and the plaintiff asked the defendant whether these were loans or debts owed by the son to the defendant, or whether she, the defendant, had given the money (which she had advanced). The defendant is said to have responded:

"Mr. Gleason, you oughtn't to speak to me as a creditor; what I do, I do in my own behalf, and as the head of the family."

The plaintiff also said that certain friends of the son would loan him money, but that the plaintiff believed that the mother (the defendant) would prefer to contribute the money. The defendant answered:

"Yes, Harry does not need to borrow of anybody. I contribute it."

Upon this part of the conversation the plaintiff brought an action against this same defendant, in contract, for the entire amount, which was tried in the District Court for the Southern District of New York, and judgment given for the defendant, on the ground that there was no agreement with the defendant in writing and that such was necessary. The judgment was affirmed in Gleason v. Thaw, 205 Fed. 505, 123 C. C. A. 573, on the ground that no contract with the defendant was broken, although this court held that such a contract need not be in writing, inasmuch as it was not an agreement to pay for the debt or default of another. The latter proposition was conceded by the plaintiff in the record of that case, and it did not appear that the defendant had agreed to pay the plaintiff for his services, or to do more than to advance money to her son to meet expenses "other than the plaintiff's charges."

But this court then further held that the action could not be maintained in tort, as no false representations were properly alleged, since the statements of the complaint showed nothing which was not true. This (in a sense obiter) finding by this court is directly relied upon by the defendant upon the present appeal. But the plaintiff answers this by the language of this court reported in Gleason v. Thaw, 223 Fed. at page 529, 139 C. C. A. at page 75, as follows:

"We construed his pleading as a declaration on contract, and that construction is binding upon both parties. Inasmuch as the earlier action was disposed of on the pleadings, the alleged contract was taken as established. That contract, made August 8, 1906, was found to be that: 'Defendant agreed that she would herself, in her own behalf as head of the family, make all the disbursements (other than payments to plaintiff) that were expedient on account of the indictment and that such payments should be chargeable against her son only as advancements; i. e., advancements on what he would receive at her death, one-third of such advancements to be remitted under her will.' We affirmed the dismissal of the complaint in that prior action, because the facts averred did not show a breach of the contract pleaded, and on the pleadings taken as proved."

The record of this case (223 Fed. 527, 139 C. C. A. 75) shows that the plaintiff after the dismissal of his former action instituted a new suit, charging the defendant with making false representations on August 8, 1906, for the purpose of inducing the plaintiff to perform services for her son upon credit as follows:

"(1) That all the disbursements thus far made by her on account of her son were made in her own behalf, as mother and head of the family, and were not liabilities of her son to her, nor chargeable against him, unless by way of advances against his interest under her last will. (2) That she had agreed with Harry Thaw to pay in her own behalf all sums necessary on account of her son and his defense (other than plaintiff's charges), by way of advancement and not creating any liability on his part for their repayment. (3) That the only restrictions as to Harry Thaw's income under his father's will were contained in an abrogated codicil, and that the provisions of the will affecting his share were in all respects the same as the provisions as to her income, and were in all respects unconditional."

It was then alleged that on or about November 1, 1906, in another interview, the defendant repeated these representations or statements, and added that all of the disbursements made by her since August 8th,

and down to the date of the later interview, were not liabilities of her son to her.

The defense of prior adjudication, based upon election by the plaintiff as shown in the action which was finally dismissed (see opinion in 205 Fed. 505, 123 C. C. A. 573, supra), was considered in the District Court to be sufficient. In this court the judgment was sustained as to any contract to make further advances, and as to any representations "subsequent to August 8, 1906, which would be in accord with the obligations of the defendant under this contract"; but the judgment of dismissal of the cause of action was reversed, with leave to the plaintiff to amend his complaint so as to rely only upon representations of fact made prior to August 8, 1906. The court (205 Fed. 529, 123 C. C. A. 573) said that her statements, to the effect that her own disbursements made prior to that date "were not loans, but were paid by her as head of the family," and that she expected to treat them as advancements in making her own will, and also her statements as to the "availability of Harry Thaw's income to meet his own obligations" were not disposed of in the prior suit (205 Fed. 505, 123 C. C. A. 573).

In the present action the plaintiff has therefore brought suit upon paragraphs 1 and 3 above quoted, and has carried the actual statement of these allegations, which he was allowed by the opinion of this court to include in his amended complaint, back to the interview of August 8, 1906. He has said nothing at all about the repetition of these statements on the date of November 1, 1906, which were considered by this court as recited by the plaintiff as the basis for such credit as he extended from November 1st on, but which this court had already held, showed no breach of contract.

In quoting from these opinions, reference has been also made to the following part of the interview, which is claimed by the plaintiff to have been a false representation of fact, and as to which the plaintiff's testimony is as follows:

"'Now,' I said, 'he says that I run no risk in waiving my requirement of specific security, because I can always have recourse to the income from the Thaw estate, of over $30,000.' Mrs. Thaw said, 'Yes, I know all about that; I was one of the executors of my husband's will; Harry has the same interest in all respects, that I have, except that mine is greater. There was,' said Mrs. Thaw, 'a codicil by which Harry's income was cut down, but that codicil was abrogated and the only restriction or difference between Harry's income and mine was in that codicil, so that this amount of money is his as it comes in.' In that connection Mrs. Thaw said something with reference to the share of Harry being less than the other children by reason of certain facts with reference to the accrual of interest during minority. I do not fully recollect what was said by Mrs. Thaw upon that subject, but after saying this she said, 'That income, I know, is his in every respect unconditionally just the same as my income is;' and she said, 'Mr. Gleason, why don't you rely upon these facts and waive your requirement of security?' 'Well,' I said, 'Mrs. Thaw, it is a very unusual thing for a lawyer to go into a long case of this kind without some provision for his services; but, assuming that the facts are as you have stated, I am inclined to humor Harry. I will waive my requirement of specific security, and I will give him a credit until next summer, and probably longer.'"

It will be seen that the District Court, upon the plaintiff's testimony in the present action, has in effect held that the detailed statements of

conversation, when testified to by the plaintiff, do not constitute actionable false representations, although these conversations more fully set forth the propositions which this court (in 223 Fed. at page 529, 139 C. C. A. 75) said might be presented as a cause of action by the plaintiff, and as to which, in the same opinion, this court said that the previous remarks with reference to the same subjects in 205 Fed. at pages 507 and 508, 123 C. C. A. 573 (and in which they were substantially held not to be actionable),, were obiter.

[2] It is evident that the previous decisions of this court were not (as they would have been in an appeal from a decree in equity) findings of fact, nor were the conclusions used for the purpose of argument in directing the technical formulation of pleadings equivalent to a decision by this court upon the meaning of the statements, nor the findings that would be made from similar testimony when the issue was presented.

[3-7] It will be observed that the defendant did not promise at any time to pay the plaintiff, nor did she agree to become surety for her son's debt, nor did she agree to make advances for her son to the plaintiff. · She, according to the detailed testimony in the present record, was following up and agreeing with the assertions of her son as to his financial capacity, as well as his responsibility to undertake payment of the expenses of the litigation. She did agree to make advances for her son to others, and not to treat these sums as loans, without notice to the plaintiff, so that he could cease to give further credit. This contract has been held not to have been broken, and it has also been held that no representations as to these later advances (after August 8, 1906) could be charged as false, if that contract was not broken (223 Fed. 529, 139 C. C. A. 75).

In such a conversation the defendant must be held to have understood, and it is not disputed in the present case that she did understand, that the plaintiff was seeking information from her upon which he intended to rely and, in so far as she was speaking of facts existing at the time of her conversation, she was· under the legal obligation to state those facts truly and fully. Sawyer v. Prickett and Wife, 86 U. S. (19 Wall.) at page 160, 22 L. Ed. 105; Kountze v. Kennedy, 147 N. Y. 124, at page 129, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651. She would render herself liable if she avoided a true or full statement of facts by suppressing matters which were actually material thereto, and which she did know or should have known were material when she undertook to make statements of fact with respect thereto. Cooper v. Schlesinger, 111 U. S. 148, at page 155, 4 Sup. Ct. 360, 28 L. Ed. 382; Adams v. Gillig, 199 N. Y. 314, 92 N. E. 670, 32 L. R. A. (N. S.) 127, 20 Ann. Cas. 910; Lynch v. Mercantile Trust Co. (C. C.) 18 Fed. 486; Farwell v. Colonial Trust Co., 147 Fed. 480, 78 C. C. A. 22.

It must be, however, borne in mind that this action is not for the rescission of a contract, nor with reference to any matter in which direct privity or contractual responsibility existed as between the plaintiff and the defendant. See cases above cited. The cause of action sounds in tort, and the liability to answer in money is implied, in the

sense that it is a legal responsibility for the damages flowing from an alleged injury which the law recognizes as creating responsibility if the requisite facts appear. A conscious intent to have the plaintiff rely upon her statements as facts is necessary, and was in fact present. Lehigh Zinc & Iron Co. v. Bamford, 150 U. S. 665, 14 Sup. Ct. 219, 37 L. Ed. 1215.

As was said in 205 Fed. 505, 123 C. C. A. 573, Mrs. Thaw was under no obligation to continue the credit to her son until her death; that is, to treat as advances and provide by her will for payment by him of such amounts as she might have seen fit to spend in his behalf. She was under no obligation to then notify the plaintiff if at any time she saw fit to demand of her son, so far as he was able to pay, that which he admittedly owed her. The taking of notes for these amounts, or the proof of notes and claims in the bankruptcy proceedings of her son, could not relate back, so as to make false her statement that on August 8, 1906, she expected to extend her credit to her son for a longer period; that is, until her death. In his complaint the plaintiff alleges that the defendant stated the moneys already advanced prior to August 8, 1906, were not loans, and that she paid those sums "without recourse to" her son. In the testimony the latter phrase is not put in the mouth of the defendant; but her statement is that she should not be called "a creditor," as she intended to take what she advanced from what her son would receive at her death.

We have nothing to do with the possibility of disputing her claims in the bankruptcy proceedings. The allowance of these claims is a finding as between all of the parties that the debts from the son to the mother did exist and had not been discharged or waived.

It is evident that the plaintiff was satisfied with the expression of the intention of the defendant as to her future conduct. She could not state as a fact what her intention might or might not be in the future, and there is no authority for basing a cause of action for misrepresentation of fact upon an agreement or contract to leave matters as they were at the time the statements were made, if the statements were true at the time. To hold otherwise would be to find a breach of the contract, which was rejected by the decision of this court in 205 Fed. 505, 123 C. C. A. 573, and which decision is apparently correct.

Upon the other matter alleged to be misrepresentation with reference to the interest of Harry Thaw under his father's will, the plaintiff urges strongly that Mrs. Thaw, as one of the executors, must be held to have known the conditions of the bequest and to be bound by the law of Pennsylvania, which at the time allowed the creation of a valid spendthrift trust. Upon the previous appeals the question was considered as to the right of Harry Thaw to use his income. As was said in 205 Fed. 508, 123 C. C. A. 573, "Harry Thaw's income from his father's estate was his own without restriction," and his creditors' inability to use it made it all the more his own, in the sense that he could do as he pleased with it.

But the plaintiff contends that Mrs. Thaw made the direct statement of fact that her husband's will left the same sort of bequest to Harry

as she had herself, except that hers produced more income. We can disregard the question of the abrogation of the codicil relating to the amount of income which the executors would pay to the son, as this evidently does not enter into the present case. If Mrs. Thaw had been stating as a fact there was no language in the will, of which she was coexecutor, suggesting other than a direct gift of a certain amount of income to her son, it might be held that she was stating something as to which she knew, or held herself out to know, the facts. On such a representation the plaintiff might have been excused from procuring a copy of the will before he relied upon this statement. But when Mrs. Thaw's statement shows her lack of appreciation or knowledge of the scope or validity of what is known as a spendthrift trust, and when apparently, as far as the record shows, nothing had informed her to the contrary, the District Court would seem to have been correct in holding that her statement, that Harry Thaw had a certain amount of income from the estate which was the same as her own, except that hers was greater in amount, and that the plaintiff could rely upon this income belonging to Harry Thaw unconditionally, was a mere expression of opinion or conclusion in so far as it defined the rights of creditors when seeking to collect a claim from that income.

The plaintiff in the present case has not been deprived of collecting his bill from the son in so far as the son may have been willing or able to pay his creditors from that income, if he had seen fit to do so. His application under the bankruptcy law may have defeated the plaintiff in collecting his bill, and the existence of the spendthrift trust may have cut down the dividends in the bankruptcy estate; but surely the defendant's idea that Harry Thaw had an income which he could use as he saw fit, and that there was no restriction upon it any more than upon her own, is not such a misrepresentation of fact as to make her liable if the bankruptcy statute and the laws of the state of Pennsylvania have allowed her son to free himself from debt, while still retaining the income which is his own (as was said in the previous opinion), much more than if his creditors could obtain a part thereof.

The judgment should be affirmed.