WILES (HALL v.). See Case No. 5,954.

---

## Case No. 17,655.

### In re WILEY.

### [4 Biss. 171.] [1]

District Court, D. Indiana. May, 1868.

PLEDGE — DELIVERY, WHEN NECESSARY — WHAT CONSTITUTES — JURISDICTION — RELIEF TO PLEDGEE.

1. To render a pledge valid, the thing pledged must, in general, be delivered to the pledgee. But to this rule there are exceptions.

2. A pledge may be valid without delivery, when an actual delivery is impossible.

3. The pledge of a note, at the time in the lawful possession of a third person, may be valid without actual delivery to the pledgee. In such a case, the third person may be regarded as the agent of the pledgee, and as holding the note for him.

4. A pledge or mortgage made to secure a debt, previously incurred but still subsisting, or to indemnify against a present liability arising out of a past contract, is made on a sufficient consideration.

5. Where the assignee has received or collected securities pledged, the court may, on petition by the pledgee, direct the assignee to apply the proceeds for the benefit of the pledgee.

[In the matter of William H. Wiley, a bankrupt.]

McDONALD, District Judge. In this case, James Davis has filed a petition alleging that one John Higgins, on the 12th of April, 1867, executed a note to Wiley the bankrupt, for five hundred dollars; that to secure one Fielding Denny on a loan of one hundred and fifty dollars, about that time made by him to Wiley, Wiley pledged to Denny that note; and that it remained in Denny's hands till Wiley was adjudged a bankrupt, and till one John M. Burns was appointed his assignee, who paid off said one hundred and fifty dollars, received from Denny the five-hundred-dollar note, collected it, and now has its proceeds in his hands.

The petition further states, that on the 25th of December, 1866, Davis the petitioner became surety for the bankrupt on a note of three hundred and thirty-five dollars, executed by them to one Abraham Utter, which is now due and unpaid; that on the 15th of April, 1867, the bankrupt pledged to the petitioner the residue of said five-hundred-dollar note (then in the hands of said Denny) over and above said one hundred and fifty dollars for which it had been previously pledged, to secure and indemnify the petitioner as such surety as aforesaid; and that the petitioner is liable, as such surety, to pay the said note of three hundred and thirty-five dollars to said Utter. The petition avers that all said transactions were bona fide; and that none of them were effected in view of the insolvency or bankruptcy of Wiley, or to violate the bankrupt law [of 1867 (14 Stat. 517)]. The petition prays that the assignee Burns be ordered to pay the said Utter, out of the proceeds of the said five-hundred-dollar note, so as to save the petitioner from liability on his suretyship. Burns, the assignee, appears to the petition, and admits the facts stated in it. And these facts are otherwise sufficiently proved.

It is very clear, from the facts established in this case, that the transaction between Wiley and Davis was a pledge, and not a mortgage, of the five-hundred-dollar note. But was it a valid pledge, and such a one as can be enforced in this form of proceeding?

1. To render a pledge valid, it is a general rule, that the thing pledged must be delivered. 2 Kent, Comm. 577, 578; Story, Bailm. § 297. This rule, however, is subject to exception. It is not necessary that the possession of the pledgee should be actual. Stocks, and, it would seem, equitable interests, though incapable of actual delivery, may be pledged. Wilson v. Little, 2 Comst. [2 N. Y.] 443; Dykers v. Allen, 7 Hill, 497.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

And perhaps it may be safely asserted that, in general, when from the circumstances of the case an actual delivery is impossible, the pledge may be good without a delivery. In this case, Wiley could not deliver the five-hundred-dollar note to Davis, because it was then in the possession of Denny, a prior pledgee. I am inclined to think therefore, that an actual delivery of the note to Davis was not indispensable to the validity of this pledge. Besides, I think that, under all the circumstances, the possession of the note by Denny should be deemed equivalent to the possession of it by Davis to the full extent of his liability on the note to Utter. On the whole, therefore, I conclude that, so far as the delivery of the thing pledged is concerned, the pledge is valid.

2. Was there a sufficient consideration for this pledge? A pledge is a species of contract; and for every contract there must be a sufficient consideration. Now, it is a general rule that a mere past consideration is not sufficient to support a contract. In the present case, the petitioner had, on the 25th of December, 1866, become surety for the bankrupt. Long afterwards, in April, 1867, in consideration of that suretyship, the pledge in question was given. It was then plainly given on a past consideration.

The only question, then, is, does the rule that a mere past consideration is insufficient, reach the cases of mortgages and pledges?—for as to these there can be no difference. I am of the opinion that they constitute a remarkable exception to the rule. I suppose that a mortgage or a pledge made upon a past consideration, if there still remains a subsisting liability, is made on a sufficient consideration. We know that it is every day's practice to enforce mortgages made to secure prior subsisting debts and liabilities; and, in this respect, surely there can be no difference between a mortgage and a pledge. Indeed, there is high authority for holding that, both in the case of a mortgage and a pledge, a past consideration is sufficient. In Jewett v. Warren, 12 Mass. 300, it appeared that Warren had become surety for Jewett by indorsing for him in blank. Afterwards, Jewett pledged or mortgaged divers saw-logs to Warren to indemnify him as such surety; and the court held that "with respect to the consideration, whatever objection might lie considering this as an absolute sale. * * * these objections vanish when the transfer is viewed as a pledge. For a liability to pay on a contract is a sufficient consideration for a mortgage or a pledge." I regard this decision in point; and, following it, I hold that the consideration, on which the pledge in question was made, is sufficient.

3. It remains to us to inquire whether the remedy prayed in this case can be granted. The petitioner asks that the money received by the assignee, and now in his hands, arising from the five-hundred-dollar note be applied to the extinguishment of the note of

three hundred and thirty-five dollars, upon which he is liable as surety.

The bankrupt act does not expressly provide, for such a case as this, such a remedy as the petitioner prays. By the letter of that act it is indeed provided that a surety may pay off his liability, and then prove the payment as a debt against the bankrupt's estate. Here, however, he would only take his dividend with the other creditors; and his lien would be gone. But the petitioner occupies the place of a pledgee rather than that of a surety. And in cases of this kind, the general provision of the act is that when one has a pledge of property of the bankrupt, if as in this case, the value of the property exceeds the amount of liability for which it is pledged, the assignee may release the property to the pledgee on receiving from him such excess; or he may sell the property subject to such lien, leaving the pledgee to assert his lien as against the purchaser from the assignee.

But these provisions of the act do not reach the present case. Here the thing pledged is gone. The first pledgee has handed it over to the assignee, who has turned it into money, and has delivered over the pledged note to the maker. Under such circumstances, the proceeds of the note can only be followed into the hands of the assignee; and his right to hold these proceeds must depend, not on any regulations of the bankrupt act, but on general principles of equity. Now it is a general principle of equity that a party interested in property may follow his interest into any new form into which it may have been changed without his fault or consent. Coffin v. Anderson, 4 Blackf. 395. In my opinion, this rule applies to the present case. The note of five hundred dollars was an indemnifying pledge in favor of the petitioner. He has a right to insist on that indemnity. If the proceeds of it go into the general fund, that indemnity will be lost. The petitioner may well claim that those proceeds shall first go to discharge his liability to Utter as surety for Wiley.

It is therefore ordered that with said proceeds the assignee discharge and take up the note executed by Wiley and Davis to Utter; and that he hold the same to be exhibited as a voucher indicating the discharge of a lien on property of the bankrupt.