JULIUS COTTON, Appellant, v. JOSEPH ARNOLD, Respondent.

Kansas City Court of Appeals, June 4, 1906.

1. **AGISTMENT: Lien: Possession.** Statutory agistment is a specie of bailment and cannot exist without the possession of the animals by the bailee.

2. **PLEDGES: Lien: Possession.** The lien of the pledgee on the property pledged cannot exist without possession.

3. **CHATTEL MORTGAGE: Agister's Lien: Pledgee's Lien.** The lien of the pledgee or the agister is superior to a subsequent chattel mortgage of the pledged property.

4. **AGISTMENT: Lien: Possession: Landlord and Tenant.** A tenant is in possession of the leased premises and his landlord is not in possession of the cattle that the tenant is pasturing on such premises, even though he performs certain services under a subsequent arrangement.

5. **REPLEVIN: Petition: Pleading: Title.** Where the plaintiff in replevin sets up the source and nature of his title, he is bound by such averments, but the real constitutive fact is his ownership and if he aver that he is in possession and the absolute owner and lawfully entitled to the possession, it is sufficient averment of his ownership and of title in his grantor.

Appeal from Pettis Circuit Court. —*Hon. Louis Hoffman*, Judge.

REVERSED AND REMANDED.

*John Cashman* for appellant.

(1) Without one is an agister, taking stock to pasture or feed or keep at so much per head, there can be no lien for the keeping. As stated, where the simple relation of landlord and tenant alone exists the landlord has no lien upon stock kept in pasture for his rent. Jones on Liens, sec. 687; Stone v. Kelly, 59 Mo. App. 214; Sherwood v. Neal, 41 Mo. App. 416; 1 Bouvier's Law Dictionary, p. 140; Powers v. Botts, 58 Mo. App. 1. (2) There is no agister's lien without the force of the statute. Section 4228, R. S. 1899. There is not a word in this statute that provides for a lien upon stock kept on land rented by the acre. Sherwood v. Neal, 41 Mo. App. 416; Munson v. Porter, 63 Iowa 453; Jones on Liens, sec. 687; Bank v. Com. Co., 61 Mo. App. 143. (3) Even if it be conceded that defendant was entitled to an agister's lien under the contract testified to by him at the trial, still under the state of his pleadings he cannot claim a lien in this case. The right to hold this property by reason of an agister's lien was a clear, distinct, positive, affirmative claim, and the defendant was not entitled to show his right to

an agister's lien under a general denial. Plaintiff's objection to the introduction of any evidence tending to prove a lien should have been sustained by the court. Guinott v. Ridge, 46 Mo. App. 254; Mize v. Glenn, 38 Mo. App. 98; Benedict v. Jones, 60 Mo. App. 219; Dillard v. McClure, 64 Mo. App. 488. (4) Even admitting the contract testified to by Arnold to the effect that the cattle should "stand good for the rent," still this private, secret agreement between Corbett and Arnold could not bind Cotton, who had no notice of its existence. Sherwood v. Neal, 41 Mo. App. 416; Workman v. Wardner, 28 Mo. App. 1; Harding v. Kelso, 91 Mo. App. 607; Carriage Co. v. Reid, 99 Mo. App. 415.

*Barnett & Barnett* for respondent.

(1) The defendant is entitled to his agister's lien on the cattle in question. The fact that the compensation for the pasture bill was fixed at so much per acre instead of so much per head does not alter the nature of the transaction as this is only a method adopted of fixing the compensation. (2) A lien for pasturing stock must be based on a contract express or implied. In this case there is an express contract, Cunningham v. Hammell, 84 Mo. App. 389; Powers v. Botts, 63 Mo. App. 285; Powers v. Botts, 58 Mo. App. 1. (3) There is no merit in defendant's contention that in order to rely upon our lien we must specifically plead it. Our answer denies that the plaintiff is entitled to the possession of the property and pleads that defendant is entitled to the possession, and asks a return thereof. Anthony v. Clark, 90 Mo. App. 387. (4) There is no merit in the contention that plaintiff had no notice of the existence of defendant's lien for pasturing the cattle. (5) We insist that the court committed no error against the plaintiff, but in any event he cannot complain as he is not entitled to recover in this case. His petition does not state a cause of action. He need not plead his

source of title, but having done so, when he pleads the facts constituting his title, those facts must show him entitled to a recovery. There is no unqualified allega-·tion in the petition that plaintiff is the owner of the property and entitled to possession. He does not allege that Corbett was the owner of the property in question at the time that he executed the mortgages thereon.

JOHNSON, J.—Plaintiff sued in replevin to recover the possession of certain cattle. He alleged in the petition that on November 16, 1904, "he was the absolute owner and lawfully entitled to the possession" of the property and that on said date defendant "wrongfully took said property from the possession of plaintiff." He further pleaded the source of his title, i. e., that he held two chattel mortgages executed and delivered to him by a Mr. Corbett conveying the cattle in question, the first of which was executed on April 15, 1903, filed May 11, 1903, and secured a debt of $570, and the second was executed May 28, 1904, filed May 31st, and secured a debt of $476.75. Then followed the averment that "Corbett failed to keep the conditions of either of said mortgages and, having so failed, this plaintiff was compelled to and did declare a forfeiture to him of the property described in each of said mortgages, and prior to the 16th day of November, 1904, had taken possession of all of the property and cattle by virtue of said mortgages." The answer in addition to a general denial contains an averment that defendant "is lawfully entitled to the possession of all said property and demands a return thereof." The judgment was for defendant and plaintiff appealed.

Defendant, as a tenant, was in the possession of a farm of two hundred acres in Pettis county and was living thereon. In the farm, about one-fourth of a mile south of defendant's dwelling-house, was a pasture containing thirty acres. Early in April, 1904, Corbett and defendant met on the street in Sedalia and a conversa-

tion ensued between them relative to the renting of the pasture. This is defendant's version of what occurred. "He (Mr. Corbett) asked me if I had a pasture to rent and I told him yes, sir, and he wanted to know how many acres there was and I said it was thirty. . . . I told him I wanted $2.75 an acre and I told him how the grass was and he said if it was satisfactory it was a trade. He came out on the Sabbath day and looked at the pasture and said it was a trade, and the next week he drove his cattle in. . . . He asked me how long he could have it and I told him as long as the grass was there. . .; .. He said he didn't have the money to pay for it (the rent) now, he was hard up, and I said, "I suppose the stock stands good for the pasturage until it is paid," and he said, "Yes, sir, the stock stands good for it; eighteen or twenty head I will leave in there to pay for the pasture." On cross-examination, defendant admitted that plaintiff was to have full control over the pasture.

Mr. Corbett testified that he was to pay $2.75 per acre for the use of the pasture during the grazing season, but denied that he agreed that his cattle should "stand good for the rent." Plaintiff had no knowledge that defendant claimed a lien on the cattle under an agreement with Corbett, but was informed by Corbett when the second mortgage was executed that the pasture was rented by the acre. Mr. Corbett placed some twenty-one head of his own cattle in the pasture and also received there a number of cattle belonging to strangers which he undertook to pasture for hire. This was known to and acquiesced in by defendant. Under a subsequent arrangement between the parties made necessary by the fact that Corbett did not live on the place, defendant attended to giving the cattle salt on several occasions; to milking one or two cows "that came in fresh" and to providing water for the cattle at a tank situated in another part of the farm when the water in the pond on the pasture became exhausted during the summer.

Defendant states that he expected to be paid for these services, though he admits nothing was said on that subject. Several days prior to November 16th plaintiff, as mortgagee, seized the cattle and drove them to another farm. On November 16th, defendant, claiming a lien on the cattle for the unpaid pasture rent, took them from the possession of plaintiff and this suit followed. It appears to be conceded that the first mortgage created no lien as against the claim of defendant, owing to the insufficiency of the description therein of the property mortgaged; and, as the second mortgage was executed and filed after the beginning of the relation between defendant and Corbett, the mortgagor, the case was tried and is argued here on the hypothesis that this is a contest between the holder of an agister's lien under the statute, or of the lien of a pledgee by contract and a subsequent mortgagee. Viewing the case from this position, the determinative question is, do the facts detailed by defendant invest him with any lien at all, for, if they do, such lien will take precedence over that of the subsequent mortgage?

An agistment under the statute, Revised Statutes 1899, sec. 4228, is a species of bailment and cannot exist without the possession of the animals being left with the bailee. [Everett v. Barse Live Stock Com. Co., 115 Mo. App. 482; State to use v. Shevlin, 23 Mo. App. 593.]

And under the theory advanced by defendant that, aside from any right derived by him by virtue of the statute mentioned, he should be regarded as the pledgee of the animals under the verbal agreement which he claims gave him a lien on them for the pasture rent, he must show in order to give his lien priority over that of the subsequent mortgagee that his possession of the animals accompanied the pledge, since possession by the pledgee of the property pledged is essential to the existence of the lien. [Storts v. Mills, 93 Mo. App. 201; Chitwood v. Zinc Co., 93 Mo. App. 225; Conrad v. Fish-

er, 37 Mo. App. 352; VanStone v. Goodwin, 42 Mo. App. 39; Staples v. Simpson, 60 Mo. App. 73.]

Therefore, whether defendant considers himself as an agister under the statute or as a pledgee by contract, the maintenance of his position in either case depends on the solution of a single question, Was he in the possession of the cattle in question during the time they remained in the pasture and when they were seized by the mortgagee?

We must decide this question against him on his own testimony. The relation between him and Corbett, as he states the contract, was that of landlord and tenant. The pasture was rented by the acre and its possession and control turned over to the tenant. In placing his own cattle in the pasture, that for the season belonged to him, the tenant in no sense parted with the possession and the fact that the landlord for the mere convenience of the tenant rendered some slight services in the care of the animals under a subsequent arrangement did not affect the relation created under the contract of letting. The possession and control of the cattle as well as that of the pasture still remained in the tenant and this fact is fatal to the existence either of an agistment under the statute or of a pledge by contract, at least, so far as the priority of the mortgage lien is concerned. The court in the instructions directed a verdict for defendant under the finding that the pasture was rented for the grazing season by the acre and "that it was agreed in said contract that the said cattle should stand good for the price of said pasture bill or for the use of said pasture for said season." For the reasons stated, this was error. There was no issue of fact under defendant's claim of title to go to the jury.

Defendant has before us in proper form the objection that the petition fails to state a cause of action and seeks an affirmance of the judgment on that ground. The point presented arises from the fact that plaintiff failed to allege that Corbett at the time he executed

Cotton v. Arnold.

and delivered the chattel mortgages was the owner of the property. It is conceded that, as this is an action in replevin, plaintiff was not required to plead the facts showing the nature and source of his title, but it is claimed that in choosing to plead them he bound himself to assert in proof no other title than that derived from the specific facts pleaded and, further, that he made the fact of his mortgagor's title elemental to his cause of action and for that reason should have pleaded it. In pleading these facts, plaintiff did restrict the cause of action on which he could recover to one founded on a title derived through the mortgages (Kansas City Wholesale Grocery Co. v. McDonald. 118 Mo. App. 471), but he does allege that at the time of the wrongful taking "by virtue of the aforesaid chattel mortgages, he was in possession and was the absolute owner and lawfully entitled to the possession" of the property. The real constitutive fact was plaintiff's ownership of the property and his right to the possession thereof at the time of the taking and this is clearly stated. Moreover, the averment that he was the owner and that his title was derived from the mortgages necessarily implies the assertion that these instruments were based upon a good title.

It cannot be denied that defendant was fully advised of the nature and scope of the elemental issues involved in the cause of action pleaded. The objection is entirely too technical to be permitted to control the disposition of the case. The judgment is reversed and the cause remanded. All concur.