## PIERCE v. NATIONAL BANK OF COMMERCE IN ST. LOUIS.

(Circuit Court of Appeals, Eighth Circuit. November 6, 1920.)

No. 5587.

1. **Courts �köö352—Complaint not stating equitable grounds for relief transferred to law side of court.**

Under equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv), the fact that a complainant in equity has an adequate remedy at law does not require dismissal of the suit, but merely transfer to the law side of the court.

2. **Pledges ⊙ö51—Complaint for accounting and redemption of securities sufficient.**

Allegations that complainant was the owner of certain securities subject to defendant's prior lien for a specified debt, that certain payments had been made on such debt, and praying that defendant be required to account for and deliver the securities to complainant after receiving any balance due it on the debt, *held* to state ground for equitable relief, for an action at law is not the appropriate proceeding to obtain redemption of pledged or mortgaged property.

3. **Pledges ⊙ö11—Delivery of pledged article unnecessary, when in possession of third party.**

The rule that an article pledged must be delivered, to constitute a valid pledge, is subject to the exception that, when the article is in the possession of a third party, it may be effectually pledged without change of possession, provided notice of the pledge is given to the party in possession.

4. **Liens ⊙ö7—Note to claimant, secured by bonds already in pledge to another, created equitable lien on the bonds.**

Where bonds are pledged with a bank to secure payment of a loan, a collateral note, subsequently executed by the pledgor to complainant, making the pledged bonds a security for a second loan, *held* to create an equitable lien, subject to the bank's rights, although the bonds did not come into complainant's actual possession.

5. **Judgment ⊙ö713(2)—Conclusiveness on same cause of action between same parties.**

Where a second suit is upon the same cause of action and between the same parties as the first, the former judgment is conclusive as to every issue which was or might have been determined in the first suit.

5. **Judgment ⊙ö713(2)—Conclusiveness on same cause of action between same parties.**

Where the second suit is upon a different cause of action, but between the same parties as the first, the judgment in the first action operates as an estoppel as to every issue actually litigated in the first action, but is not conclusive as to matters which might have been, but were not, litigated.

7. **Judgment ⊙ö948(1)—Estoppel by judgment must be pleaded.**

Where there is or may be a material issue upon a different cause of action, which may not have been litigated in the former action, the first judgment does not constitute an estoppel from litigating that issue, unless the actual litigation of such issue is pleaded and proved.

8. **Judgment ⊙ö585(2)—Test of identity of causes of action stated.**

In determining the conclusiveness of a judgment, the test of the identity of causes of action is the identity of facts essential to maintain them.

9. **Judgment ⊙ö585(4)—Matters of defense, which also constitute affirmative causes of action, not rendered res judicata.**

While defendant's failure to establish purely defensive facts renders such matters res judicata, yet when the defensive facts also constitute an

---

⊙ööFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

affirmative cause of action against plaintiff, defendant may either interpose them as a defense, or reserve them for an independent or cross action.

**10. Judgment ⊚═585(4)—Complainant, seeking recovery of pledged bonds, not concluded by judgment against him for converting stock pledged for same debt.**

Where complainant sought an accounting and recovery of bonds owned by him subject to defendant's lien thereon for a debt, a judgment secured by defendant against complainant for converting stock, which had been pledged with defendant for the same debt, *held* not to estop complainant from asserting his claims regarding the pledged bonds.

**11. Injunction ⊚═135—Temporary injunction within trial court's discretion.**

The granting or refusing of a temporary injunction is intrusted to the trial court's judicial discretion.

**12. Courts ⊚═508(3)—Restraining parties from enforcing judgment of state courts not prohibited.**

Rev. St. § 720 (Comp. St. § 1242), providing that proceedings in state court shall not be enjoined, except in bankruptcy proceedings, does not preclude federal courts from enjoining the parties to such suits from enforcing judgments, where the principles of equity demand that such action be taken.

**13. Judgment ⊚═459—Refusing temporary injunction against solvent resident bank not abuse of discretion.**

Refusing interlocutory injunction restraining a solvent resident bank from enforcing a judgment against complainant was not an abuse of discretion, although complainant claimed that a complete accounting and adjustment would reduce the ultimate amount to which the bank was entitled.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit by Henry Clay Pierce against the National Bank of Commerce in St. Louis. From a decree of dismissal, and an order denying a temporary injunction, complainant appeals. Decree of dismissal reversed, with leave to defendant to answer, and order denying the application for injunction affirmed.

Thomas W. White and Henry S. Priest, both of St. Louis, Mo. (Alton B. Parker, of New York City, and John F. Green, S. W. Fordyce, Jr., and John H. Holliday, all of St. Louis, Mo., on the brief), for appellant.

George L. Edwards, of St. Louis, Mo. (Edward J. White, of St. Louis, Mo., on the brief), for appellee.

·Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. Henry Clay Pierce brought a suit in equity against the National Bank of Commerce in St. Louis for a discovery concerning, and an accounting by it for, $750,000 par value of the mortgage bonds of the Tennessee Central Railroad Company and $250,000 par value of the bonds of the Nashville Terminal Company, which had been pledged to the bank to secure the payment to it of three promissory notes of the Tennessee Construction Company, a corporation, aggregating $700,000, the payment of the principal of

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which had been guaranteed by J. C. Van Blarcom, and the payment of interest upon which had been guaranteed by Pierce, for the discovery and accounting by the bank for moneys collected from the bonds of the terminal company and the Van Blarcom estate, for a redemption by Pierce of the $750,000 of railroad bonds still held by the bank for the $700,000 debt, and for an injunction until this relief could be had against the collection of a judgment of $700,000 which the bank had recovered in the circuit court in the city of St. Louis against Pierce for a conversion of 10,000 shares of stock of the Nashville Terminal Company, which had also been pledged to the bank to secure the payment of the $700,000 debt due it. The complainant applied for an interlocutory injunction, the defendant moved to dismiss the complaint for its failure to state a cause of action, and the court entered a decree that the application for the injunction be denied, and that the complaint be dismissed without prejudice. From this decree the plaintiff has appealed, and this appeal presents two questions:

[1] First. Did the complaint state facts sufficient to constitute a cause of action, either at law or in equity, for if it stated a cause of action at law, this case should have been transferred to the law side of the court, and there proceeded with. The fact that a complainant in equity has an adequate remedy at law is no longer sufficient ground for the dismissal of the suit. Equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv); section 274b, Judicial Code, amendment of March 3, 1915, 38 Stat. 956 (Comp. St. § 1251b); Goldschmidt Thermit Co. v. Primos Chemical Co. (D. C.) 216 Fed. 382, 383; Goldschmidt Thermit Co. v. Primos Chemical Co. (D. C.) 225 Fed. 769, 772; Corsicana National Bank v. Johnson, 218 Fed. 822, 823, 134 C. C. A. 510, 511; Id. 237 Fed. 1016, 150 C. C. A. 665; Id. 251 U. S. 68, 40 Sup. Ct. 82, 64 L. Ed. 141; United States v. Utah Power Co. (D. C.) 208 Fed. 821; A. G. Wineman & Sons v. Reeves et al., 245 Fed. 254, 257, 258, 157 C. C. A. 446, 449, 450. And if the complaint stated a cause of action in equity, the motion to dismiss it should have been denied, and the defendant should have been required to answer.

[2] Second. Did the denial of the application for the injunction constitute a violation of the principles or rules of equity established for the guidance of the trial court in the exercise of its judicial discretion in granting or refusing the injunction or any abuse of that discretion? The answer to the first question is conditioned by the material facts alleged in the complaint, and they are these:

In the year 1902, the construction company, for value, gave to the bank its three promissory notes, aggregating $700,000, and pledged with it as collateral security for the payment of this debt only, $750,000 par value of the bonds of the Tennessee Central Railroad Company, and $250,000 par value of the bonds of the Nashville Terminal Company. J. C. Van Blarcom guaranteed the payment of these notes, and Pierce guaranteed the payment of the interest thereon, and has paid large amounts on this guaranty, concerning which there has been no accounting. On November 17, 1908, the construction company for value gave its promissory note to Pierce for $600,000, and by the terms of that note pledged to him to secure the payment there-

of the $750,000 of mortgage bonds of the railroad company and the $250,000 mortgage bonds of the terminal company, subject, as declared in said note, "to a prior pledge thereof to the National Bank of Commerce in St. Louis as collateral to a loan of $700,000," and authorized him to sell these securities at public or private sale, with or without notice thereof, and to become the purchaser thereof himself, upon the failure of the construction company to pay the $600,000 note. That company failed to pay it. In January 1913, Pierce foreclosed upon these bonds, purchased them at the sale on January 3, 1913, and has ever since been the owner thereof, subject to the pledge of them to the bank.

Soon after the pledge of these securities to him in 1908, he notified the bank thereof, and soon after he acquired title to them by his purchase at the sale in 1913, and before the subsequent proceedings mentioned herein, he informed the bank that he had become the absolute owner thereof, subject to the pledge of them to the bank. Since the bank received these notices, it has sold to third parties, without notice to Pierce and without his knowledge, and without notice to the construction company and without any foreclosure of the pledge to it, the $250,000 par value of the bonds of the terminal company for an unknown amount in excess of $220,000, and has refused to apply the proceeds thereof to the payment of the $700,000 debt of the construction company which they were pledged to secure, or to account for the same to Pierce, the owner thereof, subject to the pledge to the bank. The bank still holds the $750,000 par value of the mortgage bonds of the terminal company as security for the $700,000 debt of the construction company, and Pierce offers to pay into the court the amount justly due and owing to the bank on that debt, and seeks a decree for a redemption of these bonds and the transfer of them to him upon such payment.

In the year 1908 J. C. Van Blarcom died. Thereafter the bank proved a claim against his estate, founded on his guaranties and indorsements of the notes evidencing the $700,000 debt to the bank, and received large amounts of money and securities from that estate upon this claim, which in equity and good conscience should be applied to the payment of the $700,000 debt to the bank; but the bank has refused so to apply it, or to account for it, and the complainant seeks an accounting for and an application of the moneys and securities which the bank has thus obtained from the Van Blarcom estate to the payment of the $700,000 debt.

By the promissory note of the construction company to Pierce for $600,000, dated November 17, 1908, the construction company, in addition to the collateral securities which have been mentioned, also pledged to Pierce 10,000 shares, of the par value of $1,000,000, of the capital stock of the Nashville Terminal Company, and delivered to him the certificates thereof. In 1911, for the first time, the bank notified Pierce that it claimed that this stock had been pledged to it by the construction company in 1904 to secure the latter's $700,000 debt to it. Pierce denied the existence of this prior pledge. The bank then sued him in the circuit court for the city of St. Louis for the conver-

sion of this stock. There was a trial. That court found that the bank had the prior pledge of the stock to secure its $700,000 claim; that Pierce, by refusing to deliver the stock to the bank, had converted it to his own use; that the value of it was $700,000; and rendered a judgment against Pierce for this amount, which was subsequently affirmed by the Supreme Court of the state of Missouri on January 6, 1920. It was not until after this affirmance of that judgment, and on March 18, 1920, that Pierce first learned that the bank had sold the $250,000 mortgage bonds of the Nashville Terminal Company without notice to him or the construction company, and without a foreclosure of its pledge.

The facts which have now been stated are alleged in the plaintiff's complaint. If they are true, and in determining the sufficiency of the complaint they must be so considered, the bank holds as collateral security for the $700,000 debt of the construction company to it, the $700,000 judgment against the complainant, the proceeds of the $250,000 of the mortgage bonds of the terminal company, whose stock was found by the state court to be worth 70 cents on the dollar, $750,000 of the mortgage bonds of the railroad company, and whatever securities and moneys it collected from the Van Blarcom estate. Mr. Pierce prays an accounting of these securities and an equitable application of them and their proceeds to the payment of the $700,000 debt of the construction company to the bank, offers to pay the remainder of that debt, if any, and prays that the remainder of the securities of which he is the owner, subject to the pledge to the bank, be adjudged and delivered to him as such owner.

The averments of this complaint on their face bring it far within the jurisdiction of a court of equity to marshal mortgaged or pledged securities and to decree an accounting for and application thereof to the payment of the debt they secure, to adjudge a redemption of pledged or mortgaged securities, to fix the terms upon which such redemption may be made, and to decree and enforce a trust at the suit of one having title or interest in property that is in the possession or control of another. Hubbard v. Tod, 171 U. S. 474, 478, 495, 504, 19 Sup. Ct. 14, 43 L. Ed. 246; Manhattan Trust Co. v. Sioux City & N. R. Co. (C. C.) 65 Fed. 559, 568; Benedict v. Moore (C. C.) 76 Fed. 472; Dibert v. Edw. D'Arcy, 248 Mo. 617, 647, 154 S. W. 1116. All the controversies between the parties suggested by this complaint may be heard and determined in equity in a single suit, all their rights on account of all the alleged collaterals may be adjudged by a single decree, and during the progress of the litigation, as well as at its close, the acts of the parties may be controlled and directed by appropriate orders of the chancellor.

An action at law is not the appropriate proceeding to obtain the redemption of pledged or mortgaged property to which the alleged defendant claims superior right or title, nor to adjudge or enforce a trust, nor to marshal and adjudge the liens and securities alleged in this complaint. Nor could the court in any action at law so conveniently draw to itself and conclusively adjudge all the controversies between the parties to this suit regarding the securities and rights that

ought to be here determined as in this suit in equity, and "the remedy at law which precludes relief in equity must be as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity." Boyce v. Grundy, 3 Pet. 210, 215 (7 L. Ed. 655); Oelrichs v. Spain, 15 Wall. 211, 228, 21 L. Ed. 43; Preteca et al. v. Maxwell Land Grant Co., 50 Fed. 674, 676, 1 C. C. A. 607, 609; Farwell v. Colonial Trust Co., 147 Fed. 480, 482, 78 C. C. A. 22, 24. For these reasons the complaint was not one which required or authorized the transfer of this suit to the law side of the court under equity rule 22, and it should be heard and determined in equity rather than at law.

[3] But counsel for the bank contend that the complainant's alleged title to the $750,000 of railroad bonds and the $250,000 of terminal bonds under the collateral contract of pledge in the construction company's note of November 17, 1908, and Pierce's foreclosure thereof, are void, because at the time that contract was made those bonds were in the actual possession of the bank, the first pledgee thereof, and were not delivered to Pierce, and a pledge without a delivery of the thing pledged is ineffectual. In support of their position that the delivery of the property pledged to the pledgee is indispensable to the validity of a pledge they cite two classes of cases: First, those in which at the time of the alleged pledge the subject of the pledge was in the possession or was subsequently surrendered to the pledgor; and, second, those in which the property pledged was at the time of the alleged pledge in the actual possession or control of some third party.

Cases of the first class are Casey v. Carvaroc, 96 U. S. 467, 486, 490, 24 L. Ed. 779; Third Nat. Bank v. Buffalo German Ins. Co., 193 U. S. 581, 588, 24 Sup. Ct. 524, 48 L Ed. 801; Security Warehousing Co. v. Hand, 206 U. S. 415, 421, 27·Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789; Nat. Bank of Commerce v. Equitable Trust Co., 227 Fed. 526, 142 C. C. A. 158; Vanstone v. Goodwin, 42 Mo. App. 39, 45; In re Harvey (D. C.) 212 Fed. 340, 341; Atkinson v. Foster, 134 Ill. 472, 25 N. E. 528, 529, 530; Succession of Lanaux, 46 La. A. 1036, 15 South 708, 714, 25 L. R. A. 577; Cotton v. Arnold, 118 Mo. App. 596, 601, 95 S. W. 280. Cases of the second class cited by counsel for the bank, in which the property which was the subject of the alleged pledge was at the time of the pledge in the possession or control of a third party, are Christian v. Atlantic & N. C. Ry. Co., 133 U. S. 233, 241, 243, 10 Sup. Ct. 260, 33 L. Ed. 589; Boothe v. Loy, 83 Mo. App. 601; Chitwood v. Lanyon Zinc Co., 93 Mo. App. 225, 230; Seymour v. Hendee (C. C. A.) 54 Fed. 563; In re Bacon, 210 Fed. 129, 126 C. C. A. 643.

One of the reasons, and probably the chief reason, for the alleged general rule that a deposit of the thing pledged is an indispensable attribute of a valid pledge, is that such a pledge is indispensable to prevent the possession by the pledgor of the thing pledged from giving to him a false credit, just as the failure to deliver personal property sold causes a false credit to the vendor and avoids the sale. This reason, however, ceases when at the time of the pledge the thing pledged is not in the possession of the pledgor, but is in the pos-

session and control of a third party. On this account, probably, the authorities disclose the fact that in cases of the second class, of which the case at bar is one, an exception to the general rule of the necessity of the delivery of the thing pledged to the pledgee in order to make a valid pledge early arose, and has increased in strength and breadth, until it has now become as general as the rule itself, an exception to the effect that, when the thing pledged was in the possession or control of a third party at the time of the alleged pledge, it might be effectually pledged by the owner of it, or by the owner of an interest in it, without any change of possession or control of it, if notice of the fact of the pledge was given to the party in possession. Thus, as early as 1868 in the case of In re Wiley, 4 Bissell, 171, 29 Fed. Cas. 1237, No. 17,655, the United States District Court held that where Wiley, the owner of a promissory note for $500, pledged and delivered it to Denny to secure his debt to the latter for $150, and three days later pledged his equity in the $500 note to one Davis to secure his debt of $350 to Davis, the latter pledge was valid, although the $500 note pledged was not delivered to Davis, and the court said:

"To render a pledge valid, it is a general rule that the thing pledged must be delivered. 2 Kent, Comm. 577, 578; Story, Bailm. § 297. This rule, however, is subject to exception. It is not necessary that the possession of the pledgee should be actual. Stocks, and, it would seem, equitable interests, though incapable of actual delivery, may be pledged. Wilson v. Little, 2 Const. (2 N. Y.) 443; Dykers v. Allen, 7 Hill, 497. And perhaps it may be safely asserted that, in general, when from the circumstances of the case an actual delivery is impossible, the pledge may be good without a delivery."

In the year 1900, in Chattanooga National Bank v. Rome Iron Co. et al. (C. C.) 102 Fed. 755, 758, the Rome Iron Company had pledged a quantity of iron in yard No. 48 of the American Pig Iron Storage Warrant Company to secure the payment of certain warrants which that company had issued. After that pledge was made, and while the iron was in the actual possession and absolute control of the Warrant Company, the Rome Company made its five notes for $5,100 each to the Chattanooga National Bank, and indorsed on the back of each of them these words:

"The within note is secured by the pledge and deposit of the following securities, to wit: Equity in iron in yard No. 48, Rome, Ga."

—and authorized the bank, in case of default in payment of the notes, to sell the Rome Company's equity in the iron and to appropriate the proceeds thereof to the payment of the notes which the bank held. In that case, as in this, objection was made to the enforcement of the second pledge, on the ground that there was no delivery to the second pledgee of the mere equity in the iron. In answer to this defense the court quoted section 1235 of 3 Pomeroy's Equity Jurisprudence, and Walker v. Brown, 165 U. S. 654, 662, 663, 669, 17 Sup. Ct. 453, 41 L. Ed. 865, overruled the objection, and enforced the equitable lien of the second pledgee.

[4] And here are the rules and principles applicable to and decisive of the question now under consideration in the case in hand: This is a suit in equity. It is brought to enforce the equitable lien on the

$250,000 mortgage bonds of the terminal company and the $750,000 mortgage bonds of the railroad company first pledged to the bank, evidenced by the collateral note of the construction company dated November 17, 1908. If the parties to that note intended to create such a lien, and if the intention clearly appears from the note and the facts alleged in the complaint, it is not material whether it fell under the category of a pledge, a mortgage, an assignment, or some other name. Section 1235 of Pomeroy's Equity Jurisprudence, by its approval and adoption by the Supreme Court in Walker v. Brown, 165 U. S. 654, 664, 17 Sup. Ct. 453, 457 (41 L. Ed. 865), has now become the law of this country in suits in equity in the federal courts. And it reads in this way:

"*The General Doctrine—Requisites of the Contract.* The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or incumbrancers with notice. Under like circumstances, a merely verbal agreement may create a similar lien upon personal property. The ultimate grounds and motives of this doctrine are explained in the preceding section; but the doctrine itself is clearly an application of the maxim, 'Equity regards as done that which ought to be done.' In order, however, that a lien may arise in pursuance of this doctrine, the agreement must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and must indicate with sufficient clearness an intent that the property so described, or rendered capable of identification, is to be held, given, or transferred as security for the obligation."

Tested by this rule, the collateral note of November 17, 1908, was ample to create the equitable lien upon these bonds which the complainant seeks to enforce. It was in writing. It clearly indicated the intention of the construction company to make the $1,000,000 of bonds, which it specifically described, a security for the payment of the debt of Pierce for $600,000, described in the note, and it is consequently enforceable, subject to the prior lien of the bank against all parties claiming any interest in these bonds under the construction company, including the bank itself. If further authority is desired for the conclusion here reached, it may be found in Jones on Pledges and Collateral Securities (2d Ed.) §§ 83, 364, 371; First Nat. Bank of Waterloo v. Bacon, 113 App. Div. 612, 98 N. Y. Supp. 717, 719; First Nat. Bank v. Exchange Nat. Bank (Sup.) 153 N. Y. Supp. 818, 820; Zartman v. First Nat. Bank of Waterloo, 216 U. S. 134, 138, 30 Sup. Ct. 368, 54 L. Ed. 418; First Nat. Bank v. Zartman, 189 N. Y. 533, 82 N. E. 1126; Sprague v. Cochran, 144 N. Y. 104, 112, 113, 38 N. E. 1000; Fourth Street Bank v. Yardley, 165 U. S. 634, 644, 650, 653, 17 Sup. Ct. 439, 41 L. Ed. 855; Parlin & Orendorff Imp. Co. v. Moulden, 228 Fed. 111, 112, 113, 142 C. C. A. 517, 518, 519, L. R. A. 1917B, 130; In re Imperial Textile Co. (D. C.) 239 Fed. 775, 777, 778, 779; Nat. Bank of Deposit of the City of New York

v. Henry P. Rogers et al., 166 N. Y. 380, 388, 389, 390, 59 N. E. 922; Wilson v. Little, 2 N. Y. 433, 447, 51 Am. Dec. 307.

The more convincing reasons and the weight of authority persuade that: (1) The owner of personal property subject to a prior pledge, under which the pledgee has the actual possession and control of the thing pledged, may lawfully pledge his remaining interest therein without a deposit of the property with the second pledgee, by a contract or conveyance to that effect and notice thereof to the first pledgee, who will then be deemed to hold the property in trust for both pledgees as their interests exist. (2) The owner of personal property may impose an enforceable equitable lien upon it to secure some debt or obligation by a written contract or conveyance, which identifies the property and sufficiently evidences his intention so to do. (3) The construction company, by the collateral note of November 17, 1908, and notice thereof to the bank, fastened an enforceable equitable lien upon the $250,000 mortgage bonds of the terminal company and the $750,000 mortgage bonds of the railroad company in controversy, subject to the prior lien of the bank under the pledge to it, to secure the debt of the construction company to Pierce for $600,000.

Counsel challenge the complaint on another ground: They contend that the complainant is estopped from maintaining its suit in equity for a discovery and accounting regarding the $1,000,000 of bonds pledged to the bank and to Pierce, or regarding the dividends it received from the Van Blarcom estate, because he did not plead or prove his claims therefor in the action in the state court by the bank against him for his conversion of the 10,000 shares of stock of the terminal company, which resulted in the $700,000 judgment against him. But the rules of law by which this position must be tried are:

[5] First. Where the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question and issue which was or might have been presented and determined in the first suit. Harrison v. Remington Paper Co., 140 Fed. 385, 400, 72 C. C. A. 405, 420, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Id. 199 U. S. 607, 26 Sup. Ct. 747, 50 L. Ed. 331; Southern Pacific Ry. v. United States, 168 U. S. 1, 48, 18 Sup. Ct. 18, 42 L. Ed. 355; Linton v. National Life Ins. Co., 104 Fed. 584, 587, 44 C. C. A. 54, 57.

[6] Second. When the second suit is upon a different cause of action, but between the same parties as the first, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action; but it is not conclusive relative to other matters which might have been, but were not, litigated or decided. Harrison v. Remington Paper Co., 140 Fed. 385, 400, 72 C. C. A. 405, 420, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Id., 199 U. S. 607, 26 Sup. Ct. 747, 50 L. Ed. 331; Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195; Nesbitt v. Riverside Independent District, 144 U. S. 610, 618, 12 Sup. Ct. 746, 36 L. Ed. 562; Grider v. Groff, 202 Fed. 685, 687, 121 C. C. A. 95; Board of Com'rs v. Platt, 79 Fed. 567, 25 C. C. A. 87; Linton v. National Life

Ins. Co., 104 Fed. 584, 587, 44 C. C. A. 54; Board of Com'rs Lake County v. Sutliff, 97 Fed. 270, 274, 38 C. C. A. 167, 171.

[7] Third. Where the record is such that there is or may be a material issue, question, or matter in the second suit upon a different cause of action which may not have been raised, litigated, or decided in the former action, the judgment therein does not constitute an estoppel from litigating that issue, question, or matter, unless by pleading or proof the party asserting the estoppel establishes the facts that the issue, question, or matter in dispute was actually and necessarily litigated and determined in the former action. Harrison v. Remington Paper Co., 140 Fed. 385, 400, 72 C. C. A. 405, 420, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Russell v. Place, 94 U. S. 606, 608, 24 L. Ed. 214; Ætna Life Ins. Co. v. Board of Com'rs, 117 Fed. 82, 88, 54 C. C. A. 468, 474; Cromwell v. County of Sac, 94 U. S. 351, 359, 24 L. Ed. 195; Nesbitt v. Independent District, 144 U. S. 610, 619, 12 Sup. Ct. 746, 36 L. Ed. 562; Belleville & St. L. Ry. Co. v. Leathe, 84 Fed. 103, 105, 28 C. C. A. 279, 281.

[8] Fourth. The test of the identity of the causes of action is the identity of the facts essential to maintain them. Harrison v. Remington Paper Co., 140 Fed. 385, 400, 72 C. C. A. 405, 420, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Union Central Life Insurance Co. v. Drake, 214 Fed. 536, 545, 131 C. C. A. 82, 91.

[9] Fifth. While the failure of a defendant to allege and prove facts purely defensive to an issue on trial between him and the plaintiff renders such matters res adjudicata after judgment, and estops him from again presenting them (1 Van Fleet on Former Adjudication, § 198), yet, when defensive facts also constitute an affirmative cause of action against the plaintiff, the defendant has the option to interpose them as a defense, or to reserve them for an independent or cross action. If he refrains from presenting them as a defense, the judgment in the action against him does not bar nor adjudicate his affirmative cause of action upon them, and he is free subsequently to maintain it. Virginia-Carolina Chemical Co. v. Kirven, 215 U. S. 252, 257, 260, 30 Sup. Ct. 78, 54 L. Ed. 179; Brown v. First Nat. Bank of Newton, Kan., 132 Fed. 450, 452, 66 C. C. A. 293, 295; Id., 196 U. S. 641, 25 Sup. Ct. 796, 49 L. Ed. 631; Watkins v. American Nat. Bank of Denver, 134 Fed. 36, 40, 67 C. C. A. 110, 114; Northwestern Port Huron Co. v. Babcock, 223 Fed. 479, 481, 482, 485, 486, 139 C. C. A. 27, 29, 30, 33, 34.

[10] Let us measure the alleged estoppel of the plaintiff to maintain this suit by these rules. Counsel cite, to sustain that estoppel, Miller v. Belvey Oil Co., 248 Fed. 83, 160 C. C. A. 223, and Allen v. City of Davenport, 132 Fed. 209, 220, 65 C. C. A. 641, 659. But the decisions and opinions in those cases are inapplicable to this case, because in those cases the first and second suits were between the same parties and upon the same causes of action, respectively, and were governed by the first of the above rules, while the suits in this case are upon different causes of action, and the first rule is inapplicable to them. There is no identity in the facts necessary to the maintenance or defense of the causes of action against Pierce for conversion of the

10,000 shares of Terminal stock, and the facts determinative of Pierce's cause of action against the bank for an accounting and recovery of the proceeds of the $250,000 of the mortgaged bonds of the terminal company, or for a redemption of the $750,000 of the bonds of the railroad company, or for an equitable application of the dividends from the Van Blarcom estate. The facts necessary to the maintenance of the former suit were the pledge of 10,000 shares of Terminal stock to the bank before they were pledged to Pierce on November 17, 1908, the appropriation of them or their proceeds to his own use by Pierce, and the value of the stock. None of those facts is indispensable to the maintenance of the suit in hand for a discovery of and accounting by the bank for the bonds and dividends here in question. The subjects and objects of the two suits, the facts indispensable to their maintenance or defense, and the relief sought therein are not only not identical, but are so radically different that neither could be maintained upon the facts which might sustain the other. This case, therefore, falls under the second rule, and the complainant is estopped from maintaining no position which was not actually litigated and determined in the action in the state court.

Counsel cite, however, Beloit v. Morgan, 7 Wall. 619, 621, 622, 19 L. Ed. 205, in which Morgan had sued the town of Beloit and obtained a judgment on some of the coupons upon some of a certain issue of bonds, after a trial of the issue as to the validity of the bonds made by the answer of the town. Thereafter the town brought a suit in equity against Morgan, and claimed therein that all the bonds of that issue were invalid, for the same reasons alleged in its answer in the first suit, and prayed that Morgan might be enjoined from maintaining any action upon any of them, and that those he held might be surrendered and adjudged void. The court held that the town was estopped from maintaining the suit by the former judgment. Counsel also cite Gardner v. Buckbee, 3 Cow. (N. Y.) 120, 15 Am. Dec. 256, wherein Gardner bought a vessel of Buckbee and gave him two notes for the purchase price. Buckbee sued on one of them. Gardner defended on he ground that the sale was fraudulent and there was no consideration for the note. The issue was tried, and Buckbee recovered a judgment. He then sued Gardner on the second note, and Buckbee defended on the same ground of fraud in the sale and want of consideration he presented in the first action, and the court held he was estopped by the judgment in the first action.

The decisions in these cases rest upon the facts that the two suits in each case were between the same parties upon different causes of action, and the issues in the second suits had been actually litigated and determined in the first suits. They fall under the declaration of the second rule, that in such cases the judgment in the first suit is conclusive as to every point and question actually litigated. But the complaint in this case does not disclose, nor has the bank pleaded or proved, that any of the points, questions, or issues determinative of the equitable right of the complainant to the accounting by the bank for the bonds or dividends, or to the return of the $750,000 of the bonds of the railroad company was actually litigated or adjudged in the

action in the state court, and it is governed by that part of the second rule which declares that the judgment in the first action is not conclusive as to other matters than those actually litigated and decided, which might have been, but were not, litigated or decided in the first suit. For these reasons, and for others, such as the fact that the complainant did not learn of the sale of the $250,000 of the Terminal bonds by the bank until after the judgment in the state action had been entered in the trial court, and that the fact relative to the pledges and liens in question in this suit may not have constituted a defense to the action against Pierce for the conversion of the Terminal stock at the time that issue was pending in the trial court, the conclusion is unavoidable that the complainant is not estopped by the judgment in that action from maintaining this suit and securing in this court such relief as, after pleadings and proofs, the merits of the case may demand.

[11-13] A single question remains: Was the complainant's application for an interlocutory injunction to prevent the bank from collecting the judgment of $700,000, which it had obtained in the state court, until the claims of the plaintiff in this suit could be heard and determined, improvidently denied? The law intrusts the grant or refusal of temporary injunctions to the judicial discretion, guided by the principles and rules of equity, not of the appellate, but of the trial, court. Its decision of this question, therefore, is presumptively right, and it ought not to be reversed or modified, unless it appears that it has disregarded some of the rules or principles of equity established for its guidance or has seriously abused its discretion. Stearns-Roger Mfg. Co. v. Brown, 114 Fed. 939, 941, 942, 52 C. C. A. 559; Stokes v. Williams, 226 Fed. 148, 156, 141 C. C. A. 146, 154. To sustain the denial of the injunction counsel for the bank invoke section 720 of the Revised Statutes (Comp. St. § 1242), which provides that—

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

But this section does not deprive the federal courts, sitting in equity in cases involving any controversies between the citizens of different states, of which such courts have jurisdiction, and which have been adjudged by the state courts, of the power or relieve them of the duty to enjoin the parties to such suits from enforcing judgments of the state courts in their favor where, on account of fraud, mistake, accident, or any other ground of equity jurisprudence, and on account of the threat of imminent and irreparable injury, the rules and principles of equity demand that the parties shall not proceed to enforce such state judgments. Marshall v. Holmes, 141 U. S. 589, 596, 599, 12 Sup. Ct. 62, 35 L. Ed. 870; Simon v. Southern Railway, 236 U. S. 115, 124, 129, 35 Sup. Ct. 255, 59 L. Ed. 492; National Surety Co. v. State Bank, 120 Fed. 593, 600, 602, 56 C. C. A. 657, 61 L. R. A. 394; Schultz v. Highland Gold Mines Co. (C. C.) 158 Fed. 337, 340.

The question here, therefore, is not the jurisdiction or power of the court below to enjoin the bank from proceeding to enforce or collect its judgment, but whether or not the court's exercise of that power

was just and wise. By his complaint the plaintiff presented a case which upon its face entitled him to receive from the bank by credit on the construction company's note or by payment to him the proceeds, probably amounting to $220,000, of the $250,000 of Terminal bonds and the value of the $750,000 of bonds of the railroad company, and perhaps a credit or payment on account of the dividends from the Van Blarcom estate—a matter which is purposely left without discussion or determination until after the facts relative thereto are proved. On the other hand, the bank presented an affidavit of its president to the effect that it claimed the right to apply the proceeds of the $250,000 of the Terminal bonds to the payment of debts of the construction company to it, other than that evidenced by its $700,000 debt, and that upon the payment of its judgment against the plaintiff it was willing to surrender to the plaintiff the $750,000 of the bonds of the railroad company.

The plaintiff alleged in his complaint that, if the bank had credited the proceeds of the $1,000,000 of the bonds on the $700,000 debt of the construction company those proceeds would have paid that debt, and there would be nothing to pay on the judgment against him, which is a mere collateral security for the payment of the $700,000 debt, and his counsel persuasively argue that the bank ought not to be permitted to collect the judgment against him until the issues concerning the bonds and dividends are adjudged, and the proper credits on account of them are made. But when the court below denied the application for the injunction the bank after extended litigation had recovered an unassailable judgment against the plaintiff that he was indebted to it, and that he ought then to pay to it, $700,000 on account of his conversion of the 10,000 shares of Terminal stock. The fact that the plaintiff had disputed and unliquidated claims for many hundred thousands of dollars against the bank, founded on its alleged fraudulent misappropriation of the pledged securities, was not sufficient to warrant an injunction against the collection of this judgment. To warrant such an injunction it was essential that the plaintiff should make the additional fact that the failure to issue the injunction would entail upon him irreparable loss and injury apparent to the court. He alleged that such irreparable loss and injury would result, but that was insufficient. It was indispensable to his right to the injunction that he should by averment or proof present such facts to the court that it could see from them that such injury was at least probable.

The record fails to disclose facts indicating such probable injury. It is true that in the absence of the injunction the plaintiff must pay the judgment against him before his claims to the accounting for the $1,000,000 of bonds and the Van Blarcom dividends can be adjudicated. But that fact does not entail an irreparable loss or injury upon him, because the bank is solvent and at the end of the litigation will pay, with interest and costs, the amount which the court shall adjudge it to owe. It is no ground for an injunction against the enforcement of a judgment that the defendant has unadjudicated claims for more than the face of the judgment against a solvent plaintiff, who is a resident and is within the jurisdiction of the court; and that is the case

that this record presents. A thoughtful review of the law and the facts fails to disclose a disregard by the .court below of any equitable principle or rule, or any abuse of discretion, in its action in denying the application for the injunction.

In a short memorandum, which the court below filed, it declared that it was of the opinion that upon the face of the complaint in this case certain equities were averred which might upon full hearing entitle the complainant to some relief, and it dismissed the complaint without prejudice, and denied the application for the injunction. The result reached by this court, though different in form, is the same in effect as that approved by the court below.

Let the decree of dismissal of the complaint be reversed, let the defendant answer, if so advised, and let the order denying the application for injunction be affirmed, without costs to either party.